PEOPLE v PELKEY

Docket No. 67405. Submitted July 20, 1983, at Lansing.—Decided
    September 28, 1983.

    Daniel E. Pelkey was convicted of possession of stolen property
    over $100, Oakland Circuit Court, Francis X. O'Brien, J. At the
    time of his arrest, defendant was an escapee from a penal
    institution. The trial commenced 291 days after his arrest. At
    trial, the prosecutor questioned defendant as to whether he had
    told the police his story about being an innocent bystander.
    Defendant appealed. *Held:*

    1. A prosecutor is not barred from prosecuting an inmate of a
    penal institution against whom there is an outstanding charge
    more than 180 days after receiving notice of that fact where
    the prosecutor establishes good reason for failure to bring the
    case to trial within 180 days. The trial court correctly con-
    cluded that the 180-day rule did not bar defendant's prosecu-
    tion.

    2. The prosecutor's questioning denied defendant his constitu-
    tional right to remain silent. The error was not harmless
    beyond a reasonable doubt.

    Reversed and remanded.

1. CRIMINAL LAW — INMATES — 180-DAY RULE.

    A prosecutor is not barred from prosecuting an inmate of a penal
    institution against whom there is an outstanding charge more
    than 180 days after receiving notice of that fact where the
    prosecutor establishes good reason for failure to bring the case
    to trial within 180 days (MCL 780.131; MSA 28.969[1]).

2. CRIMINAL LAW — CONSTITUTIONAL LAW — RIGHT TO REMAIN
    SILENT.

    A prosecutor's cross-examination of a defendant impermissibly
    infringed on the defendant's right to remain silent where he

REFERENCES FOR POINTS IN HEADNOTES
[1] 21A Am Jur 2d, Criminal Law § 656.
[2] 21A Am Jur 2d, Criminal Law § 942.
    75 Am Jur 2d, Trial § 149.
[3] 5 Am Jur 2d, Appeal and Error § 783 *et seq.*

questioned why the defendant had never told the police his version of the charged crime wherein the defendant claims to have been an innocent bystander and where the defendant made no allegations on direct examination that he had ever told his innocent-bystander story to the police.

3. APPEAL — HARMLESS ERROR.

The appropriate considerations in determining prejudice in an error are: first, whether the error is so offensive to the maintenance of a sound judicial process that it never can be regarded as harmless; second, if not so basic, whether the appellate court can declare a belief that the error was harmless beyond a reasonable doubt.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Lisa Varnier,* Assistant Prosecuting Attorney, for the people.

*David J. Hoffman,* for defendant on appeal.

Before: BEASLEY, P.J., and ALLEN and G. R. DE-NEWETH,* JJ.

PER CURIAM. On July 30, 1982, defendant, Daniel Eugene Pelkey, was convicted by an Oakland County Circuit Court jury of possession of stolen property over $100, MCL 750.535; MSA 28.803. After being sentenced to not less than 40 months nor more than five years in prison, defendant appeals as of right.

Defendant was charged with breaking and entering an occupied dwelling with intent to commit larceny and, in the alternative, possession of stolen property over $100,[1] arising out of the larceny of a

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] In *People v Kyllonen,* 402 Mich 135, 149-150; 262 NW2d 2 (1978), the Supreme Court endorsed the practice of the prosecutor charging a defendant with both larceny and receiving stolen property, whereby the jury is charged that it can convict the defendant of either crime

Novi home on September 9, 1981. At trial, the prosecutor adduced evidence that members of the Novi Police Department, having learned that a television set and automobile tires were situated under a tree in a field near the scene of the breaking and entering, set up a surveillance of the area during the evening of September 10, 1981. Later that evening, defendant and Barry Dorman were arrested after they approached the area where the television set was located and Dorman picked up and carried the television set. When the police officers announced their presence, defendant ran and hid behind a tree.

Testifying on his own behalf, defendant denied participating in the breaking and entering and possession of stolen property offenses. While admitting that he had knowledge that a television set was hidden in the field, he claimed that: (1) he was unaware that it was stolen property, (2) he accompanied Dorman to the field solely to determine if a television set was hidden in the area, (3) he did not expect Dorman to take the television set, (4) he refused Dorman's request for assistance in carrying the property, and (5) as a result of being startled when the police officers arrived, he hid behind a tree.

On appeal, defendant raises three issues. First, he asserts that, since 291 days elapsed from the time that the warrant was issued for his arrest to the time of trial, the trial court lost jurisdiction over the case for the prosecutor's failure to comply with MCL 780.131; MSA 28.969(1), which statute requires good faith action to bring an inmate to trial within 180 days after the prosecutor is in-

or acquit him of both charges. Under MCL 767.69; MSA 28.1009, a prosecutor is authorized to add an alternative count of larceny to any information charging a defendant with receiving and concealing stolen property.

formed that the accused is serving a prison sentence *under sentence of another court.*

Following oral arguments on the day of trial in regard to defendant's motion to dismiss based on the 180-day rule, the trial court denied the motion, holding that the delays were attributable to defendant:

*"The Court:* All right. I've heard the arguments, considered the motion, and I've reviewed the record, and the Court would find the motion to quash is denied. The prosecution and the Court did comply with the 180 day rule. The reasons this case was not tried within the 180 days are due to this court's finding of the continued adjournments, as stated upon the record by the prosecution, were not at the request or cause of the prosecution or the court—but at the primary request of the defense so they could be properly prepared for trial.

"When this case was placed on the stand-by, it was placed on stand-by by stipulations of the parties that they were ready to go to trial. For those reasons as stated, the motion is denied."

Where a defendant is on inmate status, the trial court does not necessarily lose jurisdiction if trial is not commenced within the 180-day period.[2] Among other things, the purposes of the 180-day rule are to assure an inmate's right to a speedy trial, to give an inmate who has pending offenses an opportunity to have the sentences run concurrently, and to minimize hindrances to prison rehabilitation.[3] A lapse of more than 180 days between the time the prosecutor learns that a defendant against whom there are outstanding charges is an inmate of a penal institution and time of trial

[2] *People v Castelli,* 370 Mich 147, 153; 121 NW2d 438 (1963); 1 Gillespie, Michigan Criminal Law & Procedure (1979 rev), § 98, pp 154-155.

[3] *People v Woodruff,* 414 Mich 130, 136-137; 323 NW2d 923 (1982).

establishes a prima facie violation of the statutory provision. In order to prevent operation of the statute, the prosecutor has the burden of establishing good reason for failure to bring the case to trial within the 180-day period.[4]

Upon review of the record, we conclude that the prosecutor proceeded promptly in preparing the case for trial. As the trial court noted, several of the delays were attributable to defendant, such as (1) a continuation of a pretrial for the purpose of obtaining a predisposition report, (2) an adjournment at defendant's request for an independent fingerprint analysis, (3) a defense motion for a remand to the district court for additional testimony, and (4) an adjournment pursuant to stipulation. Consequently, we conclude that the trial court correctly held that the 180-day rule was not violated in this case.

Second, defendant, under the doctrine set forth in *People v Bobo*,[5] challenges the propriety of the prosecutor's cross-examination of him regarding his silence at the time of his arrest. The record reveals that the prosecutor, after interrogating defendant on his claim that he was merely present at the field when Barry Dorman picked up and carried the stolen television set, inquired whether defendant informed the police of his claimed non-involvement in the crime:

"*Q. [Prosecutor, interposing]:* Did you tell the police, I had nothing to do with this, it was all Barry's idea?

"*A. [Defendant]:* They never asked, they never bothered to ask.

"*Q.* So you didn't say anything either?

[4] *People v Till*, 115 Mich App 788, 792-793; 323 NW2d 14 (1982); *People v Parshay*, 104 Mich App 411, 418; 304 NW2d 593 (1981).

[5] 390 Mich 355; 212 NW2d 190 (1973).

"*A.* I told them this story that I'm telling you right now, yes.

"*Q.* Who did you tell it to?

"*A.* There's the officer sitting right there—right here, the one sitting right here. I believe it was him.

"*Q.* Okay. That's Detective Barabas?

"*A.* Barabas, right.

"*Q.* Did you tell any other officers?

"*A.* Not that I recall, no.

"*Q.* Did you tell—you didn't tell it to either of the officers who arrested you and Dorman at that time?

"*A.* I asked them what I was being arrested for, and they wouldn't tell me."

In *Bobo, supra,*[6] the Supreme Court held that the silence of an accused during police interrogation or in response to an accusation may not be used against him at trial, subject to the exception that a defendant's refusal to speak during interrogation is admissible to contradict his assertions at trial that he made a statement to police. Where, as here, the defendant fails to object at trial to questions concerning his silence in the face of an accusation, this Court is not precluded from reviewing an alleged infringement of his constitutional right to remain silent.[7]

We liken this matter to *People v Hoye,*[8] where the defendant, who was charged with armed robbery, testified at trial that he was in the vicinity when the robbery occurred, but that he did not participate in the crime. On direct examination, defendant Hoye did not assert that he recited his "innocent bystander" claim to the arresting officers. On cross-examination, the prosecutor interrogated him as to the reason why he did not, in the

[6] 390 Mich 360-362.

[7] *People v Ray,* 119 Mich App 724, 727-728; 326 NW2d 622 (1982).

[8] 80 Mich App 258; 263 NW2d 343 (1977).

face of an accusation, inform the police that he was merely present when the robbery occurred. As a consequence of the prosecutor's impermissible infringement on the defendant's right to remain silent, the *Hoye* Court reversed the defendant's conviction.

In the within matter, defendant did not claim that he advised the Novi police that he was not in complicity with Dorman in connection with the stolen property. By asking defendant if he told the police officers that he was merely present at the surveillance area, the prosecutor infringed upon defendant's constitutional right to remain silent.

Relevant to an analysis of this issue is. *People v Bigge,*[9] where our Supreme Court, more than 25 years prior to the landmark decision of *Miranda v Arizona,*[10] set forth a rule protecting defendants' rights to remain silent and to be free from self-incrimination:

> "The time has not yet come when an accused must cock his ear to hear every damaging allegation against him and, if not denied by him, have the statement and his silence accepted as evidence of guilt. There can be no such thing as confession of guilt by silence in or out of court. The unanswered allegation by another of the guilt of a defendant is no confession of guilt on the part of a defendant. Defendant, if he heard the statement, was not morally or legally called upon to make denial or suffer his failure to do so to stand as evidence of his guilt."

It is noteworthy that the prosecutor, after eliciting from defendant that he informed one of the arresting officers, Frank Barabas, that he did not participate in the crime, called Officer Barabas as

[9] 288 Mich 417, 420; 285 NW 5 (1939).
[10] 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

a rebuttal witness. The rebuttal witness controverted defendant's claim that he proclaimed his innocence when arrested:

"*Q. [Prosecutor]:* Sir, are you familiar with the defendant in this matter, Daniel Eugene Pelkey?

"*A. [Officer Barabas]:* Yes, sir.

"*Q.* And how are you familiar with him?

"*A.* I was involved with the arraignment and the transporting of the subject, the initial arrest.

"*Q.* Did you at any point in time have an occasion to speak with him about this incident at all?

"*A.* Well—

"*Q.* This breaking and entering and possession of stolen property charges?

"*A.* Not directly as far as the case.

"*Q.* Did you ever at any time—were you ever contacted by him and a statement made to you by him?

"*A.* In regards to what, sir?

"*Q.* In regards to the incident surrounding his arrest in this matter?

"*A.* No, sir.

"*Q.* He never made any statements to you that in effect he was just a bystander in this—and did not in fact touch the TV or had anything to do with the acquisition of the television set?

"*A.* No, sir.

"*Q.* Did he make any representations to you in regards to having been picked up by a Mr. Dorman and having gone to a party, did he say anything about that to you?

"*A.* No, sir.

"*Q.* Or having gone to a beach, did he say anything about that to you?

"*A.* No, sir.

"*Q.* Did he say anything to you about having—then with Mr. Dorman gone to this area that you see depicted on this board here?

"*A.* No, sir.

"*Q.* Did you have any conversations at all with him about this?

"*A.* Not as far as the TV and the tires and picking up —no, sir.

"*Q.* You were present in the courtroom during part of this testimony, is that correct?

"*A.* Yes, sir.

"*Q.* Did he tell any of that testimony to you prior to this court hearing today?

"*A.* No, sir.

"*Q.* Never did?

"*A.* No."

We do not find that the violation of defendant's right to remain silent was cured by defendant's response that he *did* inform a Novi police officer of his innocence. It can be assumed that the prosecutor, through his preparation of the case, heard the police officers' version that when defendant was arrested he did not make any protestations of innocence. Therefore, the prosecutor's sole purpose in asking the question was to demonstrate to the jury that defendant failed to inform the arresting officers of his innocence, a fact which he apparently hoped would reduce the believability of defendant's defense to the charge. Clearly, the question amounted to an impermissible infringement upon defendant's right to remain silent at the time of his arrest.

In our view, the error occasioned by the improper cross-examination cannot be considered harmless beyond a reasonable doubt.[11] It is reason-

---

[11] In *People v Robinson,* 386 Mich 551, 563; 194 NW2d 709 (1972), the Supreme Court enunciated the harmless error doctrine, which requires two inquiries in determining whether an error requires reversal of a defendant's conviction: (1) whether the error is so offensive to the maintenance of a sound judicial process that it constitutes an affront to the integrity of the judicial process, and (2) if not so basic of an error, can the appellate court declare a belief beyond a reasonable doubt that the error was harmless.

ably possible that, had the questioning not occurred, one juror may have voted to acquit defendant. The evidence against defendant was not overwhelming: he did not confess to the crime, he was not observed touching the stolen property, and testimony was not presented that his fingerprints were lifted from the property. Consequently, we are constrained to reverse defendant's conviction of possession of stolen property over $100 and remand the matter to the trial court for a new trial.

In light of the foregoing resolution, we need not address defendant's claim that the trial court's aiding and abetting instructions require reversal of his conviction.

Reversed and remanded.