Gage, J.
 

 Defendant appeals as of right a sentence of fifteen to thirty years’ imprisonment imposed after a jury found him guilty of solicitation of murder, MCL 750.157b; MSA 28.354(2), and after he pleaded guilty of being a fourth-offense habitual offender, MCL 769.12; MSA 28.1084. We affirm.
 

 In June 1995, defendant was confined to the Oakland County Jail awaiting trial on embezzlement charges. Ameer Ross, another Oakland County Jail inmate, testified at trial that defendant approached him and asked if he knew someone who could kill a witness in his upcoming trial on embezzlement charges. Ross testified that defendant gave him the witness’ name and address on a piece of paper. Ross and defendant discussed a price for the murder. After some negotiation, Ross reduced the initial price of $6,000 for the murder to $2,000 with a $500 down payment. Ross testified that defendant agreed to this price and stated that his uncle would pay the money. Although Ross advised defendant that he would contact his brother about killing the witness, Ross instead contacted the sheriff. Defendant denied at trial that he had made this inquiry, alleging that he had discussed bribing the witness, not murdering him.
 

 The sheriff’s department arranged to have Deputy Andre Ewing pose as Ross’ brother and visit defendant in jail to discuss the murder. Ewing testified that defendant told him that he wanted someone “offed.” When Ewing asked him what he meant, defendant stated, “I want him taken out.” Defendant and Ewing
 
 *612
 
 then negotiated a price of $2,000 for the murder. Ewing testified that defendant agreed to deposit $200 in Ross’ account by 6:00 P.M. that night, and to pay $1,800 the next day after completion of the job. Ewing recalled that he asked defendant twice whether he was sure he wanted the murder done and that defendant replied affirmatively both times. Although defendant testified that he had only discussed bribing the witness, Ewing testified that bribery never entered the conversation.
 

 Defendant never transferred any money to Ross’ account, and the witness whom defendant wanted “offed” appeared at defendant’s embezzlement trial and testified against him. On August 11, 1995, defendant was both sentenced for the embezzlement conviction and charged with solicitation of murder.
 

 Defendant first argues that the trial court erred in denying his motion to dismiss for violation of the 180-day rule. We review the trial court’s attributions of delay for clear error.
 
 People v England,
 
 177 Mich App 279, 286; 441 NW2d 95 (1989).
 

 The 180-day rule, codified at MCL 780.131; MSA 28.969(1), states that an inmate of the Department of Corrections must “be brought to trial within 180 days” after the prosecution is given notice of untried charges against him. MCL 780.131(1); MSA 28.969(1)(1). However, when a pretrial delay greater than 180 days occurs, the rule is still satisfied if the prosecutor has taken good-faith action within that period to promptly ready the case for trial. MCR 6.004(D)(1). The 180-day period commences when either
 

 
 *613
 
 (a) . . . the prosecutor knows that the person charged with the offense is incarcerated in a state prison or is detained in a local facility awaiting incarceration in a state prison, or
 

 (b) . • ■ the Department of Corrections knows or has reason to know that a criminal charge is pending against a defendant incarcerated in a state prison or detained in a local facility awaiting incarceration in a state prison. [MCR 6.004(D)(1)(a), (b).]
 

 Defendant argues that the trial court utilized an improper starting point in making its 180-day rule calculations and that the court improperly attributed to defendant certain periods of pretrial delay. Although the parties stipulated that the beginning of the 180-day period was October 4, 1995, it is defendant’s position that the 180-day period began on August 11, 1995, the day defendant was charged with solicitation of murder. The prosecutor was aware at that point that defendant was incarcerated and awaiting a prison sentence for his embezzlement conviction. MCR 6.004(D)(1).
 

 Even granting defendant’s argument that the 180-day period began on August 11, 1995, no violation of the rule occurred because fewer than 180 days between then and November 18, 1996, the date defendant’s trial began, were chargeable to the prosecutor. The trial court found at a September 19, 1996, hearing that 335 days had elapsed from the October 4, 1995, arraignment until defendant’s September 11, 1996, motion for dismissal, 194 of which were chargeable to the defendant and 141 to the prosecution. However, because defendant stipulated at a May 2, 1996, pretrial conference that his trial would begin on July 23, 1996, the trial court clearly erred in attributing to the prosecutor the eighty-two-day period of
 
 *614
 
 delay between these dates.
 
 People v Pelkey,
 
 129 Mich App 325, 329; 342 NW2d 312 (1983). The prosecutor should be charged with the following unexplained pretrial delays,
 
 England, supra
 
 at 285: (1) the fifty-four-day delay between August 11, 1995, and defendant’s October 4, 1995, arraignment; (2) the seventeen days between the trial court’s adjournment of a scheduled December 19, 1995, pretrial hearing and January 5, 1995, when the parties stipulated to again adjourn this hearing; (3) the fifty-seven days from July 23, 1996, the stipulated trial start date, until September 19, 1996, when defendant requested new counsel; and (4) the twenty-four days from the final pretrial conference on October 25, 1996, until the first day of trial on November 18, 1996, a total of 152 days.
 
 [1]
 

 The remaining 312 days are chargeable to defendant as follows: (1) the seventy-six days from defendant’s October 4, 1995, arraignment until December 19, 1995, the first scheduled pretrial date, to which defendant stipulated; (2) the 118 days from January 5, 1996, until May 2, 1996, covering two stipulated adjournments of the pretrial conference;
 
 [2]
 
 (3) the
 
 *615
 
 eighty-two days from the May 2, 1996, pretrial conference and the stipulated starting date of trial on July 23, 1996; and (4) the thirty-six days between defendant’s request for and receipt of new counsel on September 19, 1996, and the October 25, 1996, pretrial conference.
 
 People v Jones (On Rehearing After Remand),
 
 228 Mich App 191, 196; 579 NW2d 82 (1998) (delay stemming from adjournment requested by defendant is chargeable to defendant);
 
 Pelkey, supra
 
 (delay caused by stipulated adjournment attributable to defendant). Because fewer than 180 days of pretrial delay were attributable to the prosecutor, we conclude that no violation of the 180-day rule occurred.
 

 Second, defendant claims that his trial counsel was ineffective for stipulating the erroneous October 4, 1995, start date for 180-day rule delay calculation purposes. We disagree. Without evidence of prejudice, ineffective assistance cannot be found.
 
 People v Pickens,
 
 446 Mich 298, 303; 521 NW2d 797 (1994). Defense counsel clearly erred in stipulating that the 180-day period began on the date of defendant’s arraignment, October 4, 1995, instead of the date he was charged, August 11, 1995. However, because no violation of the 180-day rule occurred, defendant was not prejudiced by defense counsel’s error. We find no ineffective assistance of counsel.
 

 Third, defendant argues that the trial court erred in denying his motion for a directed verdict because the prosecution failed to establish all the elements of solicitation of murder and because defendant proved the affirmative defense of renunciation. In reviewing a trial court’s decision regarding a motion for a directed verdict, this Court views the evidence
 
 *616
 
 presented by the prosecutor up to the time the motion was made in the light most favorable to the prosecution to determine whether a rational trier of fact could find the essential elements of the crime were proved beyond a reasonable doubt.
 
 People v Warren,
 
 228 Mich App 336, 345-346; 578 NW2d 692 (1998). Circumstantial evidence and reasonable inferences drawn from it may be sufficient to prove the elements of the crime.
 
 People v Gould,
 
 225 Mich App 79, 86; 570 NW2d 140 (1997).
 

 Pursuant to MCL 750.157b(l); MSA 28.354(2)(1), “ ‘solicit’ means to offer to give, promise to give, or give any money, services, or anything of value, or to forgive or promise to forgive a debt or obligation.” Solicitation to commit murder is a specific intent crime that requires proof that the defendant intended that a murder would in fact be committed.
 
 People v Vandelinder,
 
 192 Mich App 447, 450; 481 NW2d 787 (1992). Solicitation to commit murder occurs when (1) the solicitor purposely seeks to have someone killed and (2) tries to engage someone to do the killing.
 
 Id.
 
 Solicitation is complete when the solicitation is made.
 
 Id.
 
 A contingency in the plan may affect whether the victim will be murdered, but does not change the solicitor’s intent that the victim be murdered.
 
 Id.
 
 at 450-451. Actual incitement is not necessary for conviction.
 
 People v Salazar,
 
 140 Mich App 137, 143; 362 NW2d 913 (1985) (a defendant who attempted to incite an undercover police officer to commit murder could not escape conviction merely because the officer would not actually kill someone).
 

 Defendant argues that the prosecutor did not establish that defendant promised or offered to pay for a murder. The prosecutor presented testimony from
 
 *617
 
 Ross and Ewing that defendant stated his desire to have a witness in his embezzlement trial killed and that he was willing to pay $2,000 for the murder. According to Ewing, defendant explained that he wanted Ewing to “off” or “take out” the potential witness against him, and that he would pay Ewing $2,000. We find that this testimony was sufficient to support a rational juror’s conclusion that defendant purposely sought to have a witness in his embezzlement trial killed and engaged Ewing to do the killing.
 

 Defendant further contends that even if the elements of solicitation to commit murder are found, he established the affirmative defense of renunciation. Whether defendant’s behavior satisfied the statutorily defined renunciation defense is a legal question of statutory interpretation that we review de novo.
 
 People v Webb,
 
 458 Mich 265, 274; 580 NW2d 884 (1998).
 

 The Legislature provided for the following renunciation defense to solicitation of murder:
 

 It is an affirmative defense to a prosecution under this section that, under circumstances manifesting a voluntary and complete renunciation of his or her criminal purpose, the actor notified the person solicited of his or her renunciation and either gave timely warning and cooperation to appropriate law enforcement authorities or otherwise made a substantial effort to prevent the performance of the criminal conduct commanded or solicited, provided that conduct does not occur. The defendant shall establish by a preponderance of the evidence the affirmative defense under this subsection. [MCL 750.157b(4); MSA 28.354(2)(4).]
 

 The goal of statutory construction is to ascertain and facilitate the intent of the Legislature.
 
 People v Stanaway,
 
 446 Mich 643, 658; 521 NW2d 557 (1994). The first criterion in determining intent is the specific
 
 *618
 
 language of the statute.
 
 People v Pitts,
 
 216 Mich App 229, 232; 548 NW2d 688 (1996). Subsection 157b(4) specifically requires that the solicitor (1) notify the solicitee of the solicitor’s intent to renounce the crime
 
 and
 
 either (2) (a) warn and cooperate with law enforcement officials or (2)(b) engage in other substantial efforts to prevent the event solicited from occurring.
 

 Defendant explains that, according to the terms of his deal with Ewing, Ewing would not kill the witness unless defendant had first made a $200 down payment on the murder. Defendant alleges that he fulfilled the notice element of the renunciation defense by refraining from making this down payment. However, defendant’s mere nonpayment was insufficient to constitute notice of his alleged intent to renounce the solicitation. As the trial court astutely observed, defendant’s mere nonpayment may be attributed to other reasons: that defendant, though still intending that the witness die, was simply unable to obtain funds for the down payment; or, as the trial court theorized, that defendant’s nonpayment of the deposit represented an attempt to obtain something for nothing. Ross’ testimony that, after the targeted witness testified against defendant in his embezzlement trial, defendant expressed his displeasure that the job had not been carried out indicates a contrary intent. Because subsection 157b(4) requires renunciation “under circumstances manifesting a
 
 voluntary and complete
 
 renunciation of his or her criminal purpose,” and because no such circumstances exist here, we conclude that defendant’s failure to make a down payment on the murder did not satisfy the required notice element of the renunciation defense.
 

 
 *619
 
 Furthermore, even had we accepted defendant’s notice argument, defendant completely failed to demonstrate any attempt to either warn and cooperate with law enforcement or engage in other substantial efforts to stop Ewing from killing the witness. Because subsection 157b(4) requires both notice and further efforts by the solicitor to prevent the solicited event from occurring, we conclude that defendant’s inability to establish any further efforts on his part bar his assertion of the renunciation defense.
 

 Fourth, defendant claims that the trial court erred in denying his request to instruct the jury with regard to the affirmative defense of renunciation. We review jury instructions in their entirety to determine whether the trial court committed error requiring reversal.
 
 People v Piper,
 
 223 Mich App 642, 648; 567 NW2d 483 (1997). A court must instruct the jury so that it may correctly and intelligently decide the case.
 
 People v Clark,
 
 453 Mich 572, 583; 556 NW2d 820 (1996). Jury instructions must include all the elements of the charged offense and must not exclude material issues, defenses, and theories that are supported by the evidence.
 
 Piper, supra.
 
 A defendant asserting an affirmative defense must produce some evidence on all elements of the defense before the trial court is required to instruct the jury regarding the affirmative defense.
 
 People v Lemons,
 
 454 Mich 234, 248; 562 NW2d 447 (1997). In the instant case, defendant failed to present a prima facie defense of renunciation. Because defendant failed to present evidence regarding all elements of the affirmative defense of renunciation, the trial court correctly denied the requested instruction.
 
 Id.
 
 at 250.
 

 
 *620
 
 Fifth, defendant argues that the trial court committed error requiring reversal in denying the jury’s request for the trial transcript. We disagree. Both defense counsel and the prosecutor were present when the trial court read the notes from the jury requesting the trial transcript. The trial judge discussed the contents of these notes with the prosecutor and defense counsel, who both agreed that no trial transcript existed and that the trial court should so advise the jury. Therefore, we conclude that the trial court did not abuse its discretion in denying the jury’s trial transcript request.
 
 People v Wytcherly (On Rehearing),
 
 176 Mich App 714, 715-716; 440 NW2d 107 (1989).
 

 Next, defendant argues that the trial court erred in improperly limiting his cross-examination of Ross regarding the charges and penalties Ross was facing and regarding the timing of Ross’ discussions with deputies about defendant’s murderous inquiries. A trial court’s limitation of cross-examination is reviewed for an abuse of discretion.
 
 People v Minor,
 
 213 Mich App 682, 684; 541 NW2d 576 (1995).
 

 The trial court did not prevent defendant from eliciting Ross’ criminal background. The court sustained the prosecutor’s objection to an inquiry by defense counsel regarding Ross’ status as a fourth-offense habitual offender. Before this objection, the defense had established that Ross was in the Oakland County Jail in June 1995 awaiting sentencing after pleading guilty to a charge of larceny by conversion, that he had pleaded guilty of being a fourth-offense habitual offender, and that he was residing in jail at the time of defendant’s solicitation trial. Immediately after the court had sustained the prosecutor’s objection,
 
 *621
 
 defense counsel went on to establish that Ross had received a one-year sentence and had been granted work release. Defense counsel further inquired whether Ross had been promised anything in exchange for his testimony against defendant, to which Ross responded negatively, and questioned Ross regarding a previous situation in which Ross had testified against someone accused of solicitation of murder. We conclude that any alleged error in the trial court’s precluding defendant’s inquiry regarding Ross’ fourth-offense habitual offender status was harmless in light of defendant’s extensive cross-examination.
 

 We find no error requiring reversal in the trial court’s sustaining the prosecutor’s objection to certain questions regarding Ross’ delay in reporting the alleged solicitation. Before the objection, defendant was able to elicit through extensive questioning that Ross was unsure about the timing of the events. Any alleged error would again have been harmless given defendant’s extensive cross-examination establishing Ross’ uncertainty regarding the sequence of events.
 

 Finally, defendant claims that his sentence was excessive and disproportionate. This Court’s review of an habitual offender sentence is limited to considering whether the sentence violates the principle of proportionality set forth in
 
 People v Milbourn,
 
 435 Mich 630, 635-636, 650-654; 461 NW2d 1 (1990), without reference to the guidelines.
 
 People v Gatewood (On Remand),
 
 216 Mich App 559, 560; 550 NW2d 265 (1996). A sentence constitutes an abuse of discretion if it is disproportionate to the seriousness of the circumstances surrounding the offense and the offender.
 
 Milbourn, supra
 
 at 636.
 

 
 *622
 
 Defendant argues that the trial court abused its discretion in failing to take into consideration that he was a nonviolent offender and that his nine prior felonies were generally property-related crimes. Because defendant qualified as a fourth-offense habitual offender, the trial court had broad discretion to sentence him to any period of incarceration up to life. MCL 769.12(l)(a); MSA 28.1084(l)(a). The trial court sentenced defendant to a minimum term of fifteen years’ imprisonment. In light of defendant’s extensive record that included nine prior felony convictions, and considering the very serious nature of the crime, we conclude that the sentence was proportionate to the offense and the offender. Furthermore, even if defendant had not been a fourth-offense habitual offender, his minimum sentence would have fallen within the guidelines range and would have been presumptively proportionate.
 
 People v Albert,
 
 207 Mich App 73, 75; 523 NW2d 825 (1994). Affirmed.
 

 [1]
 

 It is questionable whether this time should be charged to the prosecution under the circumstance that defendant agreed with the October 4 date as the beginning date for counting the 180 days. Had defendant asserted the August 11 date, it is possible that the prosecutor would have made a record regarding the prearraignment delay, would have challenged the court’s attributing only 194 days to defendant, and would have insisted on an earlier trial date.
 

 [2]
 

 Defendant argues that he should not be charged with the stipulated adjournments because the prosecutor failed to writ him out of prison to appear in court on the dates scheduled. We reject this argument because defense counsel also requested a pretrial motion hearing date, and because there is no indication that defendant could not have been brought to court well before the next scheduled date had counsel not stipulated the adjourned date.