# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MICHAEL JAMES SHERWOOD,

Defendant-Appellant.

UNPUBLISHED
July 28, 2015

No. 321558
Ingham Circuit Court
LC No. 11-000740-FH

Before: SAWYER, P.J., and DONOFRIO and BORRELLO, JJ.

PER CURIAM.

Defendant appeals as of right his jury conviction of possession of a controlled substance (marijuana) with intent to deliver/and or manufacture, MCL 333.7401(2)(d)(*iii*). The trial court sentenced defendant as an habitual offender, third offense, MCL 769.11, to 12 months in jail. For the reasons set forth in this opinion, we vacate defendant's conviction and sentence, reverse the trial court's order denying defendant the right to present a Section 8 defense under the Michigan Medical Marihuana Act (MMMA),[1] MCL 333.26421 *et seq.*, and remand for a new trial.

## I. BACKGROUND

On May 6, 2011, Officer Casey Christman of the Michigan State University Police Department was working as a road patrol officer on an overtime grant for Ingham County. Traveling westbound on Kalamazoo Street in Lansing, Christman observed defendant's vehicle driving in front of his police cruiser. Christman ran defendant's license plate number in the "LEIN" system and determined that defendant had an outstanding felony warrant in Flint for a controlled substance offense. Christman effectuated a traffic stop, and after determining that defendant was the driver of the vehicle, contacted authorities in Flint who requested that Ingham County lodge defendant until they could pick him up on the outstanding warrant. At some point during the traffic stop, defendant informed Christman that he had a medical marijuana registration card (medical marijuana card) and that he had a small amount of marijuana in the

---

[1] Although the MMMA uses "marihuana," for the purposes of this opinion, we employ the more common spelling "marijuana."

-1-

center counsel and in the trunk of his vehicle. Christman did not find any marijuana in the center counsel, but found suspected marijuana plants in the trunk of the vehicle. Specifically, Christman testified that he found "what appeared to be a small marijuana plant sitting in a cup," a backpack with "approximately seven jars of . . . suspected marijuana," a "cooler [with] three large, clear Ziploc bags that were approximately 10 inches by 10 inches that were filled with material that also appeared to be marijuana," and "12 to 14 small plants" in the vehicle's trunk. Christman testified that the total weight of the suspected marijuana was approximately 535 grams.

Sheila Meese, a forensic scientist with the Michigan State Police Department, testified as "an expert in the analysis of an identification of controlled substances." She explained that she tested one of the containers and one of the Ziploc bags and each tested positive for marijuana. Meese testified that the material in the container and bag that were tested was the same material as that in the other containers and bags. Meese explained that the total weight of the marijuana that was submitted to her was 382.37 grams.

Defendant was eventually charged with possession of marijuana with intent to deliver. On January 3, 2012, defendant filed a motion to dismiss, asserting Section 8 of the MMMA, MCL 333.26428, as an affirmative defense. Defendant argued that he was entitled to immunity under the MMMA, or, in the alternative, he was entitled to present the defense to the jury.

On December 21, 2012, the trial court held an evidentiary hearing to determine whether defendant was entitled to immunity or to assert the defense during trial. At the hearing, defendant presented the expert testimony of Dr. Frank Telewski, PhD, "a professor in the Department of Plant Biology and the curator of the J.W. Beal Botanical Garden at Michigan State [University]," who testified "as an expert in the area of plant biology." Telewski testified that a marijuana plant is generally used for producing hemp from the stems of the plant and producing tetrahydrocannabinol (THC) from trichomes (hair-like structures) that cover the plant. Telewski testified that there are some trichomes on the stem and some on the leaves, but are predominantly located on the flower of the plant. The stems have a "small, small," quantity of trichomes. Telewski testified that THC produces medicinal effects such as pain and nausea relief. Telewski testified that "useable marijuana" is the dried leaves and flowers of the plant, not the stalks, seeds, and roots. According to Telewski, marijuana plants are not indigenous to Michigan and take anywhere from 90 to 120 days to cultivate from seeds depending on the grower's horticultural experience.

Telewski examined the evidence that police seized from the trunk of defendant's vehicle, which had been placed in eight vacuum-sealed plastic bag containers. Telewski testified that containers 1-3 contained leaf and stem materials, while containers 4-5 contained flower buds, or the "reproductive part of the plants" that also contained stem material to support the buds. Container 6 contained "cuttings" that had "some leafy material," but also had "quite a bit of stem" that was not capable of producing "cotyledons"—i.e. juvenile leaves. However, green fleshy leaf and stem material could be used to try and stimulate root growth or new plants. None of the cuttings contained roots. Container 7 had leafy plant material and stem material and container 8 contained a pill bottle, a pill vial, and several plastic bags of marijuana seeds, which were not in "useable" form. Telewski explained that none of the stem material in the containers was "useable."

-2-

Telewski also testified that, assuming the plants were harvested on April 26, 2011, as of May 6, 2011, the plants would not have had enough time to "cure" to remove water from the plants and it was "highly unlikely" that the plant material was dry enough to be useable. When marijuana plants are wet, they are not useable and would weigh more than if they were dried. Telewski explained that the plants had been dried at some point before police sealed them into the evidence containers because the plants were not moldy or decomposed. Telewski testified that the police lab reports appeared to count plant-material in both "useable" and "plant" form and he was not sure that the material should be counted as both. Telewski explained that a part of the plant called the "petiole" connected the leaves of the plant to the stalk of the plant. Thus, the petioles could be considered part of the stalk and were not useable.

Defendant testified that he suffered from several disabilities including spondylolisthesis, herniated discs, sciatica, and rheumatoid arthritis. Defendant had back pain and had difficulty standing or sitting for extended periods. In 2007, defendant treated with several doctors and underwent magnetic resonance imaging (MRI) tests. He was diagnosed with spondyloslisthesis and was prescribed numerous pain medications including Vicodin. Defendant explained that he suffered numerous side-effects from the pain medications and they made him feel sedated. In 2010, defendant treated with Kim Gross at the Hamilton Community Health Clinic (HCHC) and asked her about medical marijuana to relieve his symptoms. Gross informed defendant that she could not write a recommendation for marijuana because she was not a physician, but she referred defendant's case to Dr. Gary Roome, M.D., who worked at the same clinic. Defendant testified that Dr. Roome conducted a physical examination and eventually informed him that medical marijuana would be beneficial. Dr. Roome signed defendant's application for a medical marijuana card and Dr. Roome's recommendation was sent to the state. At the evidentiary hearing, defendant offered his June 9, 2010 application for a medical marijuana card into evidence. The application contained a "physician's statement" completed by Dr. Roome asserting that defendant was diagnosed with a debilitating medical condition including severe and chronic pain, and severe and persistent muscle spasms. After submitting the application, defendant received his medical marijuana card effective June 30, 2010, with an expiration date of July 2012. The card was valid and in effect at the time of defendant's arrest. A copy of the card was admitted into evidence at the hearing.

Defendant proceeded to testify that he began cultivating marijuana after receiving his medical marijuana card. Defendant explained that he purchased marijuana seeds on the Internet and cultivated the seeds hydro-phonically in his basement. Defendant's growth cycle from seed to useable plant took about 120 to 180 days. Defendant testified that he smoked five to seven marijuana joints per day and each joint contained approximately one gram of marijuana. The marijuana relieved his pain and he was able to function at a higher level as compared to the narcotic prescription pain killers. Given an average of five joints per day, defendant used approximately 600 grams of marijuana per 120 days or every cultivation cycle.

Defendant testified that on the day of his arrest, he stopped at Hydro-Glo to pick up his paycheck. At the time, defendant had three Ziplock bags of marijuana leaves, seven jars of buds, seeds, a backpack, a cooler and "un-rooted cuttings" in the trunk of his vehicle. Defendant explained that the Ziploc bags had "trim leaf," with stems and "garbage" parts of the plants that he planned to discard. This material had been trimmed off the plants in the jars. Defendant stated that he had just harvested about three or four plants and left two at his home that were not

in bloom, so he did not have any useable marijuana at his home. Defendant testified that he planned to take all of the material to a friend's house to process what he could from the "garbage" plants and buds to try and make hash and butter to work on a formula for brownies. Defendant explained that he planned to go to his friend's house because Child Protective Services (CPS) previously removed his children from his home for a time because the home smelled like marijuana. Defendant did not want to experiment with the marijuana in his home because he was afraid of having his children taken away again, although defendant admitted that he smoked marijuana at times when he was at home. Defendant testified that he did not intend to sell or distribute the marijuana, but instead was going to use it in brownies for his back pain.

On January 2, 2013, the trial court issued an opinion and order denying defendant's motion to dismiss the charges, but granting defendant's motion to submit a Section 8 defense to the jury. The court reasoned that defendant submitted sufficient evidence to create an issue of fact with respect to all three elements of the Section 8 defense. The court noted that defendant presented his medical marijuana card that was issued prior to the arrest and that defendant testified that he was transporting the marijuana for purposes of making it into brownies for medicinal use. Additionally, the court reasoned, there was evidence to create an issue of fact as to whether defendant possessed a quantity of marijuana that "was not more than was reasonably necessary to ensure the uninterrupted availability of marijuana for the purposes of treating or alleviating" defendant's medical symptoms. Specifically, the court noted that defendant testified that he "requires an average of five joints a day to control his pain and it takes 120 days to grow from seed to harvest." The court rejected the prosecution's argument that defendant needed testimony of a physician in order to establish a prima facie Section 8 defense citing *People v Kiel*, unpublished opinion per curiam of the Court of Appeals, issued July 17, 2012 (Docket No. 301427).

Thereafter, the prosecution again moved to preclude defendant's MMMA defense, arguing that defendant could not establish a prima facie Section 8 defense absent testimony of a certifying physician. The prosecution argued that defendant's testimony alone could not create an issue of fact to support a Section 8 defense. Defendant replied, arguing that the physician's statement in support of his application for a medical marijuana card was sufficient evidence to establish a prima facie Section 8 defense.

The trial court held a motion hearing on May 8, 2013, and, following oral arguments, the trial court reversed its previous ruling and precluded defendant from asserting the defense at trial. The court explained:

> Well, because of the way the medical marijuana law came about of course many of us viewed the legislation as very sketchy, vague, unclear in providing little guidance for how a case will actually proceed.
>
> * * *
>
> So, that hearing happened and at the time of the hearing . . . the only authority I had, which wasn't binding at all, was the unpublished case [*Kiel*, unpub. opn.], a decision . . . from the Court of Appeals. And, I used that case as the only authority that I had at the time to allow the Defendant to show prima

facie, the requirements of Section 8, by virtue of his medical marijuana card and his testimony as well about his medical conditions and his need for medical marijuana. Had I had the unpublished case of [*People v Dehko*, unpublished opinion per curiam of the Court of Appeals, issued March 21, 2013 (Docket No. 305041)], which was subsequently released . . . I would have ruled differently frankly. And, now upon review of the *Dehko* case and comparing it to the *Kiel* case I would say this, it is clear to me at this point that the *Kiel* case really is not guidance in this case because in *Kiel* the defendant was claiming that he was a caregiver and he claimed that he had five patients. And, of course it's important because you get 12 plants per patient. And, he produced as evidence . . . the fact that they had cards, that they were registered with the State.

[] So, that went to the issue of how many patients he was a caregiver for. That is not the issue in this case. []

The *Dehko* case is right on point and it says that the trial court gave the defendant multiple opportunities to produce medical evidence to support his affirmative defense, but all he presented was a physician's certificate and a marijuana cultivation expert. It would seem exactly what we had here. And, the Court of Appeals said that that was not enough to make a prime [sic] facie case. He did not—and, this is the Court of Appeals speaking in *Dehko* referring to the defendant there,

"Defendant did not testify and did not present any medical records or medically based evidence or testimony from Dr. May or another knowledgeable doctor regarding how much marijuana he was instructed to use or needed to use at the time to address his condition, and how often and how long he needed to use it. The mere certification does not provide any information regarding how much marijuana defendant should use for treatment. Further, defendant did not explain below how a marijuana cultivation expert possessed the medical knowledge or information to address defendant's medical condition and the amount of marijuana defendant needed for his allegedly serious or debilitating health condition. Because defendant failed to establish a question of fact with respect to this element of the Section 8 defense he was not entitled to assert the Section 8 defense at trial . . . ."

But, that is identical to what we have here . . . And, I think that it is valid and important guidance on how the Court of Appeals reviews this prima facie case requirement. It was not met in this case and I'm granting . . . [the motion] to preclude the defense at trial.

The trial court entered a written order on May 8, 2013, reflecting its ruling.[2] This Court subsequently denied defendant's application for interlocutory leave to appeal the order. *People v Sherwood*, unpublished order of the Court of Appeals, entered November 14, 2013 (Docket No. 316489).

Thereafter, the case proceeded to a jury trial wherein defendant was precluded from offering any evidence of his use of medical marijuana or his possession of a medical marijuana card. Defendant was convicted and sentenced as set forth above. This appeal ensued.

## II. ANALYSIS

Defendant contends that the trial court erred in denying him the right to present a Section 8 defense at trial.

A trial court's decision as to whether a defendant is entitled to assert an affirmative defense is reviewed for an abuse of discretion, while its findings of fact in support of its decision are reviewed for clear error. *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010); *People v Bylsma*, 493 Mich 17, 26; 825 NW2d 543 (2012). The interpretation and application of the MMMA involves a question of law that we review de novo. *People v Kolanek*, 491 Mich 382, 393; 817 NW2d 528 (2012).

Section 8 of the MMMA, MCL 333.26428, provides an affirmative defense to medical marijuana patients and caregivers generally for "possession of a quantity of marihuana for the purpose of treating or alleviating the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition[.]" MCL 333.26428(a)(2); *People v Carruthers*, 301 Mich App 590; 837 NW2d 16 (2013). The defense is available regardless of the amount of marijuana possessed. *Id*. A defendant's failure to present sufficient evidence to establish a Section 8 defense precludes him from presenting that defense at trial. *People v Anderson*, 298 Mich App 10, 18; 825 NW2d 641 (2012), citing *Kolanek*, 491 Mich at 412-413.

A Section 8 defense requires the defendant to show that:

(1) A physician has stated that, in the physician's professional opinion, after having completed a full assessment of the patient's medical history and current medical condition made in the course of a bona fide physician-patient relationship, the patient is likely to receive therapeutic or palliative benefit from the medical use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition;

---

[2] The court entered a separate order holding that defendant was not entitled to Section 4 immunity; defendant does not challenge that holding on appeal.

(2) The patient and the patient's primary caregiver, if any, were collectively in possession of a quantity of marihuana that was not more than was reasonably necessary to ensure the uninterrupted availability of marihuana for the purpose of treating or alleviating the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition; and

(3) The patient and the patient's primary caregiver, if any, were engaged in the acquisition, possession, cultivation, manufacture, use, delivery, transfer, or transportation of marihuana or paraphernalia relating to the use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition. [MCL 333.26428(a).]

In *Kolanek*, 491 Mich at 412, our Supreme Court set forth a procedural framework for defendants who assert a Section 8 defense in a pretrial motion as follows:

[I]f a defendant raises a § 8 defense, there are no material questions of fact, and the defendant "shows the elements listed in subsection (a)," then the defendant is entitled to dismissal of the charges following the evidentiary hearing. Alternatively, if a defendant establishes a prima facie case for this affirmative defense by presenting evidence on all the elements listed in subsection (a) but material questions of fact exist, then dismissal of the charges is not appropriate and the defense must be submitted to the jury . . . Finally, if there are no material questions of fact and the defendant has not shown the elements listed in subsection (a), the defendant is not entitled to dismissal of the charges and the defendant cannot assert § 8(a) as a defense at trial. [*Id*. (footnotes omitted).]

Defendant contends that the evidence he presented at the preliminary hearing was sufficient to create a genuine issue of fact with respect to whether he established all of the elements of a Section 8 defense. We proceed by reviewing the evidence presented at the evidentiary hearing to determine whether the trial court abused its discretion in denying defendant the Section 8 defense guided by the general principal that "[a] defendant asserting an affirmative defense must produce *some evidence* on all elements of the defense before the trial court is required to instruct the jury regarding the affirmative defense." *People v Crawford*, 232 Mich App 608, 619; 591 NW2d 669 (1998) (emphasis added).

The trial court erred as a matter of law in concluding that, under *Dehko*, unpub op., defendant failed to present evidence sufficient to create issues of fact on the elements of a Section 8 defense. Initially we note that *Dehko* is unpublished and it is not binding authority under the rule of stare decisis. MCR 7.215(C)(1). Moreover, the panel in *Dehko* did not hold that the defendant in that case was *required* to present the testimony of a physician in order to satisfy Section 8 of the MMMA. Rather, in that case, police discovered 70 marijuana plants in the defendant's condominium. Slip op. at 1. The defendant moved to assert a Section 8 defense, and at a pre-trial evidentiary hearing, the defendant relied exclusively on his registry identification card, a copy of the written certificate signed by his doctor, and the testimony of a marijuana cultivation expert. *Id*. at 1-2. Critically, this Court reasoned that the defendant did not

offer any evidence to support the second element of the defense, i.e. that he "possessed only the amount of marihuana reasonable necessary to ensure him an uninterrupted supply for the treatment or alleviation of his alleged serious or debilitating medical conduction or symptoms of that condition." *Id*. at 2. This Court noted that neither the defendant nor a physician testified at the hearing regarding the amount of marijuana that the defendant "was instructed to use or needed to use at a time to address his condition, and how often and how long he needed to use it." *Id*. The Court concluded, that "[t]he mere certification does not provide any information regarding how much marihuana defendant should use for treatment." *Id*.

Unlike in *Dehko*, in this case, defendant did offer some evidence to support that he possessed only an amount of marijuana that was "reasonable necessary to ensure him an uninterrupted supply for the treatment or alleviation of his" medical symptoms. In addition to his registry card and a physician's statement, defendant testified about his medical symptoms and about how much marijuana he needed to use per day to relieve his medical symptoms. The defendant in *Dehko* did not offer any such testimony, either from a lay witness or an expert witness. Specifically, in this case, defendant testified that, on average, he smoked five marijuana joints per day and that each joint contained one gram of marijuana. Defendant testified that this usage relieved his pain symptoms and that he was able to function at a higher level then when he was taking prescription pain medications.

Defendant also testified that a cultivation cycle for growing marijuana plants was about 90 to 120 days and that for a full cultivation cycle, he needed about 600 grams of marijuana in order to be able to smoke five marijuana joints per day. Here, police seized approximately 535 grams of marijuana from defendant's trunk, which, according to defendant's expert botanist, included unusable stalks of the plant. Defendant testified that he did not have any more mature "useable" marijuana plants at his home and the prosecution did not offer any evidence to rebut that assertion. Thus, unlike in *Dehko*, here, a reasonable juror could have concluded that defendant possessed only enough marijuana to relieve his pain symptoms for one growth cycle and that this amount was therefore a quantity that "was not more than was reasonably necessary to ensure the uninterrupted availability of marihuana for the purpose of treating or alleviating [defendant's] serious or debilitating medical condition or symptoms of [defendant's] serious or debilitating medical condition." MCL 333.26428(a)(2).

Moreover, contrary to the state's argument, there is nothing in the MMMA that requires a defendant to offer the expert testimony of a physician or any other medical expert in order to satisfy the elements of a Section 8 defense. Rather, a defendant need only produce "*some evidence*" on all the elements of a Section 8 affirmative defense before the court is required to instruct the jury on the defense. See *Crawford*, 232 Mich App at 619 (emphasis added). Indeed, to be entitled to the defense at trial, a defendant need not *prove* all of the elements of the defense, but rather the evidence submitted may leave open material questions of fact as to each of the elements. *Kolanek*, 491 Mich at 412. Stated differently, if a defendant submits evidence on which reasonable jurors could differ, than he has made a prima facie showing and is entitled to present the defense at trial. *Id*.; see also *West v Gen Motors Corp.*, 469 Mich 177, 183; 665 NW2d 468 (2003) (explaining that, "[a] genuine issue of material fact exists" in a proceeding when there is "an issue upon which reasonable minds might differ.")

In short, defendant was not required to offer the testimony of a physician or other medical professional to establish any of the elements of a Section 8 defense; to the extent the trial court concluded that *Dehko* held otherwise, it erred as a matter of law. Furthermore, the trial court erred in concluding that, under *Dehko*, there was insufficient evidence in this case to create issues of fact as to all of the elements of a Section 8 defense.

As discussed above, defendant offered evidence to support the second element of the defense—i.e. whether the amount of marijuana in his possession "was not more than was reasonably necessary to ensure the uninterrupted availability of marihuana for the purpose" of treating his medical symptoms. In addition, defendant offered evidence to create a question of fact as to the first element of the defense. The first element requires proof that:

> A physician has stated that, in the physician's professional opinion, after having completed a full assessment of the patient's medical history and current medical condition made in the course of a bona fide physician-patient relationship, the patient is likely to receive therapeutic or palliative benefit from the medical use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition [MCL 333.26428(a)(1).]

Defendant offered his own testimony and the physician's statement that Dr. Roome completed and signed in support of defendant's application for a registration card to support that he had a bona fide physician-patient relationship with his physician, and that the physician completed a "full assessment of the patient's medical history and current medical condition." *Id*. Although the Legislature amended the MMMA to add the definition of the term "bona fide physician-patient relationship," effective April 1, 2013, see 2012 PA 512, the alleged criminal conduct in this case occurred on May 6, 2011, and the state does not contend that the definition applies retroactively. See e.g. *People v Russo*, 439 Mich 584, 594; 487 NW2d 698 (1992) ("The general rule of statutory construction in Michigan is that a new or amended statute applies prospectively unless the Legislature has expressly or impliedly indicated its intention to give it retrospective effect.")

For purposes of this case, at the time of the alleged criminal conduct, the statute did not define the term "bona fide physician-patient relationship." In *People v Redden*, 290 Mich App 65, 86; 799 NW2d 184 (2010), this Court applied the dictionary definition of "bona fide"—i.e. "1. made, done, etc., in good faith; without deception or fraud. 2. authentic; genuine; real,"— and declined to "define exactly what must take place in order for a bona fide physician-patient relationship to exist." Having reviewed the record, we conclude that there was sufficient evidence to raise issues for the trier of fact concerning whether Dr. Roome's recommendation resulted from an assessment made during the course of a bona fide physician-patient relationship.

Specifically, defendant testified that he received treatment from several physicians and was diagnosed with medical ailments and prescribed numerous pain medications. Defendant testified that in 2010, he began treating with Kim Gross at HCHC and informed Gross that he had been prescribed numerous pain medications that did not work and that he wanted to try medical marijuana as an alternative. According to defendant, Gross could not write a recommendation for medical marijuana so she submitted his case to Dr. Roome, an M.D. at the

-9-

HCHC. Defendant testified that, sometime thereafter, the clinic called him in "to meet with [Dr. Roome] so that he could tell me that after a large lengthy discussion that they and the board had decided that they believed that medical marijuana would be beneficial and that they'd sign my paperwork and allow me to go on from there. . . ." Defendant testified that Dr. Roome signed a recommendation for medical marijuana only after performing a physical examination of defendant. At the time of the hearing, defendant was still receiving treatment from Dr. Roome for "a number of things." In addition, defendant introduced Dr. Roome's signed physician statement in support of his application for a registration card wherein Dr. Roome indicated that defendant suffered from a debilitating medical condition. This evidence, viewed in totality, was sufficient to create an issue of fact regarding the first element of a Section 8 defense.

Similarly, there was evidence sufficient to raise an issue for a trier of fact as to whether defendant was "engaged in the acquisition, possession, cultivation, manufacture, use, delivery, transfer, or transportation of marihuana or paraphernalia relating to the use of marihuana to treat or alleviate [defendant's]" medical symptoms. MCL 333.26428. Defendant testified that he had recently harvested the marijuana in his trunk and that he was transporting it to the home of a friend where he was going to experiment with making brownies. Defendant explained that he wanted to make brownies as an alternative to smoking marijuana. Defendant testified that he was going to eat the brownies to relieve his back pain and that he wanted to transport the marijuana to his friend's home because CPS previously removed his children from his home because the home smelled like marijuana. While the jury was certainly free to find that defendant was not credible in these assertions, reasonable jurors could have disagreed as to defendant's credibility. Defendant was only required to offer "some evidence" in support of this element. *Crawford*, 232 Mich App at 619.

Additionally, we note that *People v Hartwick*, 303 Mich App 247; 842 NW2d 545 (2013), lv granted 496 Mich 851 (2014), is not controlling in this case. In *Hartwick*, a police officer met the defendant outside the defendant's home and asked whether there was marijuana in the home. *Id*. at 252. The defendant replied that he was a medical marijuana patient and caregiver and admitted growing marijuana in his home. *Id*. The defendant granted the officer permission to search his home, and once inside, the officer discovered "many marijuana plants," which, according to the officer, included 77 plants in small Styrofoam cups. *Id*. at 252-254.

The defendant was charged with manufacturing and possession with intent to deliver and he moved to dismiss the charges, under Sections 4 and 8 of the MMMA. *Id*. at 253. At an evidentiary hearing, the defendant testified that he was a medical marijuana patient and a caregiver for five additional medical marijuana patients. *Id*. The defendant introduced registry identification cards for himself and his five patients. *Id*. While the cards confirmed the defendant's status as a caregiver, the defendant "was unfamiliar with the health background of his patients and could not identify the maladies or 'debilitating conditions' suffered by two of his patients." *Id*. Furthermore, the defendant "was not aware of how much marijuana any of his patients were supposed to use to treat their respective conditions or for how long his patients were supposed to use 'medical marijuana.' And he could not name each patient's certifying physician." *Id*.

In regard to the defendant's Section 8 defense, the prosecution argued that "defendant did not know the amount of marijuana necessary to treat his patients' debilitating medical

-10-

conditions—meaning that defendant could not meet the evidentiary requirements of the § 8 affirmative defense." *Id*. at 254-255. In response, the defendant argued that the patient and caregiver registry identification cards were all that he needed "to establish the fact that these people were authorized by the state of Michigan and approved." *Id*. at 255.

The trial court held that the defendant was not entitled to assert the Section 8 defense at trial. *Id*. at 255. The court reasoned that "it heard no testimony regarding a 'bona fide physician-patient relationship or a likelihood of receiving therapeutic or palliative benefit from the medical use of marijuana,' or any testimony on whether defendant possessed no more marijuana than reasonably necessary for medical use." *Id*. at 255.

On appeal, the defendant argued that "*mere possession of* [a registry identification card] entitles him to . . . an affirmative defense under § 8." *Id*. at 251 (emphasis added). A panel of this Court rejected that argument, explaining, "a registry identification card is necessary, but not sufficient, to comply with the MMMA but clearly does not satisfy the § 8 requirements for a total defense to a charge of violation of this act." *Id*. at 263.

This Court proceeded to hold that proof of a registry card standing alone could not satisfy the first element of a Section 8 defense. This Court reasoned that a bona fide physician-patient relationship is a "pre-existing and ongoing relationship with the patient as a treating physician," and that "[a] registry identification card . . . cannot demonstrate a 'pre-existing relationship between a physician and a patient, much less show 'ongoing' contact between the two." *Id*. at 265-266.

Apart from the registry cards, the defendant failed to present any other evidence to support the first element of a Section 8 defense:

> [h]ere, *defendant presented evidence of a bona fide physician-patient relationship between him and his doctor*. But he presented no evidence that his patients have bona fide physician-patient relationships with their certifying physicians. None of [the defendant's] patients testified. Nor was defendant able to provide the names of his patients' certifying physicians . . . [t]he plain language of § 8 obviously requires such information for a patient or caregiver to effectively assert the § 8 defense in a court of law. [*Id*. at 266-267 (emphasis added).]

With respect to the second element—i.e. the patient or caregiver possessed only an amount of marijuana that was "reasonably necessary to ensure . . . uninterrupted availability"—this Court explained that this element "involves two components: (1) possession, and (2) knowledge of what amount of marijuana is 'reasonable necessary' for the patient's treatment." *Id*. at 267. These requirements necessitate "a patient or caregiver that is intimately aware of exactly how much marijuana is required to treat a patient's condition, which he learns from a doctor with whom the patient has an ongoing relationship." *Id*. at 268.

This Court concluded that the defendant failed to offer evidence to support the second element, stating:

> Here, defendant lacks the requisite knowledge of how much marijuana is required to treat his patients' conditions—and even his own condition. *He*

-11-

*presented no evidence regarding how much marijuana he required to treat his pain and how often it should be treated.* And he testified that he did not know how much marijuana his patients required to treat their conditions. Defendant thus failed to satisfy the second element of the § 8 affirmative defense. [*Id*. at 268 (emphasis added).]

Given that the defendant failed to create questions of fact as to the first and second elements, and considering that the trial court did not make findings with respect to the third element, this Court did not address whether the defendant's testimony satisfied the third element. *Id*. at 269. Instead, this Court again explained that mere possession of a patient or caregiver registry card was insufficient to support the third element of a Section 8 defense. *Id*.

*Hartwick* is not controlling in this case. Initially, we note that the *Hartwick* Court did not hold that expert medical testimony is required to support a Section 8 defense; rather, the case stands for the proposition that proof of a registry card, in and of itself, is insufficient to support the defense. In this case, defendant did not rely solely on his registry card, but rather offered testimony to support the elements of a Section 8 defense.

Importantly, unlike in *Hartwick*, in this case, defendant did not claim caregiver status. The defendant in *Hartwick* was not entitled to a Section 8 defense because he offered nothing more than registry cards to support that his five patients had bona fide physician-patient relationships and that he possessed a quantity of marijuana that was not more than was reasonably necessary for their medical use. In contrast, in this case, defendant's testimony supported that he had a bona fide physician-patient relationship with Dr. Roome. Defendant's testimony supported that he was a regular patient at the HCHC and that he had an ongoing relationship with Dr. Roome. Defendant testified that Gross referred his case to Dr. Roome and that Dr. Roome conducted a physical examination before writing a recommendation for medical marijuana. Subsequently, defendant continued to see Dr. Roome as a patient. This testimony supported that Dr. Roome recommended medical marijuana during the course of a bona fide physician-patient relationship. See e.g. *Hartwick*, 303 Mich App at 266 (noting that while the defendant failed to present evidence that his patients had bona fide relationships with their physicians, the defendant's testimony was "evidence of a bona fide physician-patient relationship between him and his doctor.")

Additionally, with respect to the second element, unlike the defendant in *Hartwick* who "presented no evidence regarding how much marijuana he required to treat his pain and how often it should be treated," in this case, defendant testified about his pain symptoms and how much marijuana he used on a daily basis to obtain relief from his symptoms. After defendant obtained his medical marijuana registry card, he continued to be a patient at the HCHC and his testimony supported that he was "intimately aware of exactly how much marijuana" was required to treat his condition. *Hartwick*, 303 Mich App at 268. There is nothing in the language of the MMMA or in the holding in *Hartwick* that requires a physician's testimony as to an exact amount of marijuana a defendant should use to obtain relief of his medical symptoms.

For these reasons, we conclude that *Hartwick* is legally and factually inapposite and it does not control the outcome of this case.

In sum, the trial court erred as a matter of law in concluding that under *Dehko*, defendant failed to offer evidence sufficient to create issues of material fact on the elements of a Section 8 defense. Defendant offered sufficient evidence to create genuine issues for the trier of fact as to each of the elements of the defense and the trial court erred in denying defendant's motion to present the affirmative defense during trial. Accordingly, we vacate defendant's conviction and sentence, reverse the trial court's order denying defendant's request to assert a Section 8 defense, and remand for a new trial.[3]

Vacated, reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ David H. Sawyer
/s/ Pat M. Donofrio
/s/ Stephen L. Borrello

---

[3] Given our resolution of this issue, we need not address defendant's argument that trial counsel rendered ineffective assistance of counsel.