# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TIMOTHY YOUNG, JR.,

        Defendant-Appellant.

UNPUBLISHED
October 16, 2018

No. 338613
Berrien Circuit Court
LC No. 2016-003942-FH

Before: SAWYER, P.J., and STEPHENS and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his convictions on two counts of assault with intent to do great bodily harm less than murder in violation of MCL 750.84, and two counts of possession of a firearm when committing or attempting to commit a felony in violation of MCL 750.227b(1) (felony-firearm). The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to concurrent terms of 120 months to 180 months' imprisonment for his assault convictions to be served following two consecutive terms of 2 years' imprisonment for his felony-firearm convictions. We affirm defendant's convictions but reverse and remand for resentencing.

On September 10, 2016, defendant's neighbor, Jeanie Patton-Yarbrough, hosted a memorial gathering to commemorate her recently deceased sister. The memorial started around 2:00 p.m. and lasted until around midnight. Defendant also had some people over at his house, including his cousin Mceldon Gorman. He and Gorman both drank to the point of inebriation. During the afternoon, Gorman went over to Yarbrough's memorial and ate some food. Because he was uninvited, Yarbrough asked him to leave and he returned to defendant's house. Yarbrough drank alcohol throughout the day and into the night. Her cousin, Dontae Henderson also drank heavily that evening. As Yarbrough's guests departed, Yarbrough and Henderson worked to clean up Yarbrough's yard and house when defendant's girlfriend stopped over and asked if she could stay at Yarbrough's house for a while because she had an argument with defendant. She and Yarbrough talked for a while until she felt ready to return to defendant's house around 1:00 a.m. on September 11, 2016. Yarbrough decided to accompany her because she desired to buy cigarettes from defendant, which she had done before.

When Yarbrough entered defendant's house, she and Gorman got into a dispute. The witnesses' recollections varied as to what exactly transpired, but it appears that Yarbrough left

-1-

defendant's house and returned home very angry and worked up. She decided to return to defendant's house, and Henderson went with her. They entered defendant's house and commenced to beat Gorman senseless. A friend of Yarbrough, Darnette Adkinson, later arrived at Yarbrough's house, learned she was next-door, and hearing a commotion, went over to defendant's house where she observed Yarbrough and Henderson beating Gorman. She implored them to leave. Defendant ultimately told Yarbrough and Henderson to get out of his house, and once they exited, he shut his front porch screen door. Yarbrough apparently realized she had not purchased the cigarettes she set out to buy from defendant, so she and Henderson turned back and started yelling about buying some cigarettes. Defendant appeared to agree and turned as though he was getting something. He opened the screen door, walked out onto his porch, reached back like he was getting a pack of cigarettes out of his pocket, pulled out a gun, and shot Yarbrough. Henderson said to defendant, "Fool, why you shoot—shoot her?" Then defendant shot Henderson in the chest. Yarbrough, Henderson, and Adkinson each testified that defendant had a gun and shot the women after things seemed to have calmed down. They each heard three to four gunshots. After he shot the women, defendant went behind his house. Police later recovered a .22 caliber revolver under a shed in defendant's backyard that had four spent shells.

Defendant was charged with two counts of assault with intent to commit murder in violation of MCL 750.83, two counts of felony-firearm, and one count of receiving and concealing a stolen firearm contrary to MCL 750.535b. Throughout his trial, defendant claimed that he had not had a gun and was not the shooter. On the second day of trial, defense counsel told the trial court that defendant maintained that he was not the shooter and did not commit the charged offenses but requested that the trial court provide the jury a self-defense or defense of others instruction as part of the final jury instructions. The trial court reflected upon the testimonies of Yarbrough, Henderson, and Adkinson regarding the incident and observed that, despite some discrepancies in their testimonies, each unequivocally identified defendant as the shooter. Further, the trial court recalled that no testimony established that anyone tried to hurt defendant or go back after Gorman when the shooting happened. The trial court, therefore, denied the request based on the evidence presented up to that point in the trial but indicated that it might change its decision depending upon the evidence presented during the remainder of the trial.

After the close of all proofs, with one exception, the parties agreed to the final jury instructions. Defendant approved the trial court's inclusion of instructions regarding the lesser included offense of assault with intent to do great bodily harm less than murder. In closing argument, defendant essentially argued that the prosecution failed to prove that he shot the gun and committed the charged offenses. The jury found defendant guilty of the lesser included offense of assault with intent to do great bodily harm less than murder.

At defendant's sentencing, the trial court assessed defendant 10 points for Prior Record Variable (PRV) 7 as required under MCL 777.57(1)(b) because he had one concurrent conviction resulting in a 10 point total PRV score and PRV Level C. The trial court assessed defendant a total Offense Variable (OV) score of 76 points resulting in an OV Level VI. Assault with intent to do great bodily harm less than murder is a Class D felony with a statutory maximum sentence of 10 years' imprisonment. See MCL 750.84(1)(a). The Sentencing Guidelines specify for Class D offenses for a second-degree habitual offender with a PRV Level C and OV Level VI

that the minimum sentence is 29 to 71 months. The trial court sentenced defendant to concurrent terms of 120 months to 180 months' imprisonment for his convictions for assault with intent to do great bodily harm less than murder. The trial court stated a few reasons for its departure from the guidelines and observed that its sentence exceeded the sentencing guidelines' range but noted that they were advisory only pursuant to *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015). Defendant now appeals.

Defendant first argues that he was denied his right to present a defense when the trial court refused to instruct the jury on self-defense or the defense of others. We disagree.

We review de novo jury instruction issues involving questions of law. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). We review for an abuse of discretion a trial court's determination whether a jury instruction is applicable to the facts of a case. *Id*. "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). "The defendant bears the burden of establishing that the asserted instructional error resulted in a miscarriage of justice." *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010). We review de novo issues of statutory construction, which involve questions of law. *People v Ryan*, 295 Mich App 388, 400; 819 NW2d 55 (2012).

"A defendant in a criminal trial is entitled to have a properly instructed jury consider the evidence against him or her." *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). "A defendant asserting an affirmative defense must produce some evidence on all elements of the defense before the trial court is required to instruct the jury regarding the affirmative defense." *People v Crawford*, 232 Mich App 608, 619; 591 NW2d 669 (1998). If a defendant introduces evidence supporting self-defense, he is entitled to a jury instruction on self-defense. *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002).

In *People v Guajardo*, 300 Mich App 26, 35; 832 NW2d 409 (2013) (citation omitted), this Court reaffirmed the general principle that "a defendant does not act in justifiable self-defense when he or she uses excessive force or when the defendant is the initial aggressor."

In this case, we find no evidence presented at trial that established that defendant acted in self-defense or the defense of another person. Yarbrough, Henderson, and Adkinson each testified that the arguments and altercations between Yarbrough, Henderson, and Gorman had ceased, and to the extent arguments occurred between Yarbrough, Henderson, and defendant, those also had ceased. Although the witnesses' testimonies varied somewhat respecting the exact details of the events, Yarbrough, Henderson, and Adkinson's testimonies were consistent. They testified unequivocally that defendant faced no threat of violence. Their testimonies established that Yarbrough and Henderson were outside defendant's house when he stepped outside onto his porch, pointed a gun at them, opened fire, and shot them at close range. Yarbrough, Henderson, and Adkinson each testified that defendant had the gun and did the shooting. The evidence further established that Yarbrough and Henderson were unarmed. Further, at the time of the shooting, they were not making any aggressive movements toward defendant.

Moreover, defendant did not advance a self-defense or defense of others theory at trial. He consistently defended throughout trial on the ground that he was not the person who shot Yarbrough and Henderson. He claimed someone else shot them. No testimony even remotely suggested that defendant acted in self-defense or the defense of another person. Although the evidence established that Yarbrough and Henderson beat Gorman repeatedly, the evidence did not establish that defendant intervened or actually took steps to protect Gorman. At most, some evidence was presented that defendant removed Yarbrough and Henderson from his house, terminating the altercation between the women and Gorman, after which the situation became calm. Nevertheless, despite removing them from his house, defendant retrieved a gun, approached Yarbrough and Henderson on or near his porch and shot them without provocation.

No evidence established that defendant honestly and reasonably believed that the use of deadly force was necessary to prevent the imminent death of or imminent great bodily harm to himself or another person. Under the facts of this case as presented through the testimonies of Yarbrough, Henderson, and Adkinson, the evidence did not warrant giving the jury a self-defense or defense of others instruction. Therefore, the trial court did not abuse its discretion by declining to give the jury a self-defense or defense of others instruction because the evidence at trial did not support such an instruction.

Defendant next argues that he should not have been sentenced as a second-offense habitual offender and that his sentence failed to meet the proportionality doctrine established by *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). We believe that the trial court correctly sentenced defendant as a second-offense habitual offender, but we agree that defendant's sentence failed to meet the proportionality principle articulated in *Milbourn*.

We review for an abuse of discretion whether a sentence is proportionate to the seriousness of the offense. *People v Armisted*, 295 Mich App 32, 51; 811 NW2d 47 (2011). A trial court abuses its discretion when it chooses an outcome falling outside the range of principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). We review for clear error a trial court's reasons for a departure from the legislative sentencing guidelines. *People v Smith*, 482 Mich 292, 300; 754 NW2d 284 (2008). We review de novo questions of law. *People v Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004). A sentence that fulfills the principle of proportionality under *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), is reasonable under *Lockridge*, 498 Mich 358. *People v Steanhouse*, 313 Mich App 1, 47-48; 880 NW2d 297 (2015), aff'd in part 500 Mich 453 (2017).

Defendant argues that his second-offense habitual offender status must be vacated because the sentence enhancement was improperly based on a misdemeanor conviction. Defendant's argument lacks merit.

The second-offense habitual offender statute, MCL 769.10, states in pertinent part:

(1) If a person has been convicted of a felony or an attempt to commit a felony, . . . and that person commits a subsequent felony within this state, the person shall be punished upon conviction of the subsequent felony and sentencing under section 13 of this chapter as follows:

(a) If the subsequent felony is punishable upon a first conviction by imprisonment for a term less than life, the court, except as otherwise provided in this section or section 1 of chapter XI, may place the person on probation or sentence the person to imprisonment for a maximum term that is not more than 1-1/2 times the longest term prescribed for a first conviction of that offense or for a lesser term.

Under Michigan law, trial courts may consider misdemeanor convictions for which imprisonment of more than one year may be imposed for determination of habitual offender status. "Offenses punishable-by-more than one year of imprisonment are 'felonies' for purposes of the habitual-offender, probation, and consecutive sentencing statutes." *People v Smith*, 423 Mich 427, 445; 378 NW2d 384 (1985). In this case, defendant pleaded guilty in 1984 to attempted resisting and obstructing in violation of MCL 750.479, which at the time, the crime was a misdemeanor punishable by imprisonment in the state prison for not more than two years. Thus, even though defendant's attempted crime was a misdemeanor, because the crime was punishable by a maximum of two years' imprisonment, it served as an "attempt to commit a felony," and the trial court did not err when it relied on defendant's previous conviction in sentencing defendant as a second-offense habitual offender.

However, we find that defendant's argument that the trial court imposed a disproportionate sentence for his assault convictions has merit. The Michigan Supreme Court recently clarified and reaffirmed its holding in *Lockridge* that sentencing courts must determine the applicable range of sentence under the sentencing guidelines and take such calculations into account when imposing a sentence even though the guidelines are advisory only and not mandatory. *People v Steanhouse*, 500 Mich 453, 470; 902 NW2d 327 (2017).

We review a sentence that departs from the applicable guidelines range for reasonableness. *Lockridge*, 498 Mich at 392, citing *United States v Booker*, 543 US 220, 261; 125 S Ct 738; 160 L Ed 2d 621 (2005). Although *Lockridge* did not specify how a reasonableness analysis must be conducted by this Court, it made clear that sentencing courts must justify their sentences to facilitate appellate review. *Lockridge*, 498 Mich at 392.

This Court has instructed that, when reviewing a sentence for reasonableness under the abuse of discretion standard, reviewing courts must determine whether the sentence fulfills the proportionality principle defined in *Milbourn*. *Steanhouse*, 313 Mich App at 42-48. Under the *Milbourn* proportionality principle, the trial court must determine whether the particular departure was proportionate to the circumstances of the offense and the offender. *Milbourn*, 435 Mich at 636. "[T]he 'key test' of proportionality is not whether the sentence departs from or adheres to the recommended range, but whether it reflects the seriousness of the matter." *People v Houston*, 448 Mich 312, 320; 532 NW2d 508 (1995) (citation omitted).

This Court recently explained in *People v Steanhouse (On Remand)*, 322 Mich App 233, 238-239; 911 NW2d 253 (2017), the appropriate analysis for determining whether an upward departure by the trial court meets the *Milbourn* proportionality principle:

Factors that may be considered under the principle of proportionality standard include, but are not limited to:

(1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [Citation omitted.]

An appellate court must evaluate whether reasons exist to depart from the sentencing guidelines and whether the extent of the departure can satisfy the principle of proportionality. See *Milbourn*, 435 Mich at 659-660; 461 NW2d 1 (recognizing that "[e]ven where some departure appears to be appropriate, the extent of the departure (rather than the fact of the departure itself) may embody a violation of the principle of proportionality"). Therefore, even if cases where reasons exist to justify a departure sentence, the trial court's articulation of the reasons for imposing a departure sentence must explain how the extent of the departure is proportionate to the seriousness of the circumstances surrounding the offense and the offender. See *People v Smith*, 482 Mich 292, 304; 754 NW2d 284 (2008) ("When departing, the trial court must explain why the sentence imposed is more proportionate than a sentence within the guidelines recommendation would have been.").

In *People v Dixon-Bey*, 321 Mich App 490, 524-525; 909 NW2d 458 (2017), this Court clarified:

Because the guidelines embody the principle of proportionality and trial courts must consult them when sentencing, it follows that they continue to serve as a "useful tool" or "guideposts" for effectively combating disparity in sentencing. Therefore, relevant factors for determining whether a departure sentence is more proportionate than a sentence within the guidelines range continue to include (1) whether the guidelines accurately reflect the seriousness of the crime; (2) factors not considered by the guidelines; and (3) factors considered by the guidelines but given inadequate weight. When making this determination and sentencing a defendant, a trial court must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been. [Quotation marks and citations omitted.]

In this case, the trial court did not explain whether there were circumstances that were not adequately embodied within the variables used to score the guidelines. The trial court merely explained that the testimonies of witnesses at trial indicated that the victims were terrified and that defendant had shot them without provocation at close range causing them serious physical and emotional injuries. The trial court opined that defendant was a dangerous person and that its sentence appropriately fit the crimes, but it made no effort to justify why the substantial upward departure sentence it imposed was more proportionate to the offense and the offender than the minimum sentence range calculated under the guidelines.

The record reflects that the trial court assessed the maximum number of points permissible under the facts of this case for each applicable sentencing guidelines offense variable. Defendant was assessed points for OVs 1 and 2 because of his aggravated use of the gun in the commission of the crimes. Defendant was assessed points for OVs 3 and 4 because of the serious physical and psychological injuries defendant inflicted upon his victims. Because two victims were placed in danger of physical injury or death, defendant was assessed points for OV 9, and he received one point for OV 12 because he committed one contemporaneous felonious criminal act. One cannot reasonably conclude that the scoring of the offense variables under the sentencing guidelines failed to adequately account for the seriousness of the crimes or the impact on defendant's victims. All of the factors discussed by the trial court to support its departure sentence were accounted for by the offense variables.

Further, the record reflects that, before his current felony convictions, defendant maintained employment and did not have a lengthy criminal history. The record did not indicate that defendant had a propensity for committing violent crimes, that he was a recidivist, or lacked potential for rehabilitation and deserved greater punishment than contemplated by the guidelines. Although defendant had 10 misdemeanor convictions, the most recent dated back to 1993. Despite defendant's lack of remorse and continued denial of shooting his victims, nothing else in the record supported the conclusion that a departure sentence was more proportionate than a sentence within the guidelines. Accordingly, we believe that the trial court abused its discretion by imposing its upward departure sentence of a 120-month minimum sentence when the 29-month-to-71-month minimum sentence range calculated under the guidelines adequately took into account all of the variables relied upon by the trial court for its imposition of an upward departure. The trial court's 120-month minimum sentence, therefore, exceeded the guidelines minimum range without justification.

We hold that the trial court correctly sentenced defendant as a second-offense habitual offender. The misdemeanor the trial court considered was a felony for purposes of habitual offender determination because the attempted crime was punishable by more than one-year imprisonment. The trial court, however, abused its discretion by imposing its upward departure sentence of a 120-month minimum sentence when the 29-month–to-71-month minimum sentence range calculated under the guidelines adequately took into account all of the variables relied upon by the trial court for its imposition of a substantial, unjustifiable upward departure.

Affirmed in part and reversed and remanded for resentencing. We do not retain jurisdiction.

/s/ David H. Sawyer
/s/ Cynthia Diane Stephens
/s/ Michael F. Gadola

-7-