*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHRISTOPHER ARREN WASHINGTON,

        Defendant-Appellant.

UNPUBLISHED
February 12, 2019

No. 336436
Genesee Circuit Court
LC No. 15-038315-FC

Before: CAMERON, P.J., and BECKERING and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of assault with intent to commit murder, MCL 750.83, assault with intent to do great bodily harm less than murder, 750.84, resisting or obstructing a police officer causing serious impairment of a body function, MCL 750.81d(3), four additional counts of resisting or obstructing a police officer, MCL 750.81d(1), carrying a concealed weapon (CCW), MCL 750.227, felon in possession of a firearm, MCL 750.224f, felon in possession of ammunition, MCL 750.224f(6), two counts of malicious destruction of police property, MCL 750.377b, and possession of firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as a second-offense habitual offender to concurrent prison terms of 262 to 560 months for the assault with intent to commit murder conviction, 120 to 180 months for the assault with intent to do great bodily harm conviction, 120 to 270 months for the resisting or obstructing causing serious impairment conviction, 18 to 36 months for each remaining resisting or obstructing conviction, 36 to 90 months each for the CCW and felon-in-possession convictions, and 36 to 72 months for each malicious destruction of police property conviction, to be served consecutive to a mandatory two-year term of imprisonment for the felony-firearm conviction. We affirm.

## I. FACTS AND PROCEEDINGS

Defendant's convictions arise from a police confrontation on the night of January 23, 2015, in Flint Township. At approximately 10:30 p.m. that evening, Flint Township Police Officer Michael Scheyler ran a license plate check of defendant's vehicle, using the Law Enforcement Information Network, and learned that defendant had three outstanding

misdemeanor warrants. Scheyler, who was in uniform and driving a fully marked police vehicle, approached defendant outside defendant's motel room at the Hometown Inn in Flint Township. After confirming defendant's identity, Scheyler informed defendant that he was taking defendant into custody for outstanding warrants. According to Scheyler, defendant refused to comply with Scheyler's commands to put his hands behind his back. When Scheyler grabbed defendant by the front of his coat, defendant pushed Scheyler and began struggling with him, and defendant then shot Scheyler, wounding his arm and striking the left side of his torso. Scheyler's bullet-proof vest prevented the bullet from entering his abdomen. Scheyler used his radio to call for assistance. Scheyler was able to escape and run to the parking lot of a restaurant next door.

Scheyler and defendant exchanged more gunfire across the parking lots. Defendant then got back into his vehicle and began driving toward the parking lot exit. In the meantime, other officers began arriving in response to Scheyler's request for assistance. Swartz Creek Police Officer Nicholas Patrick Paul began pursuing defendant's van in his police vehicle. Defendant put his vehicle into reverse and backed into Paul's vehicle. Defendant then got out of his vehicle and started shooting toward Paul. Paul and Scheyler returned the gunfire. Defendant sustained three gunshot wounds and fell to the ground. Several officers held defendant down to handcuff him. Defendant continued to resist until he received four "drive stun" shots from an officer's taser. Ambulances arrived to take defendant and Scheyler to a nearby hospital.

## II. SELF-DEFENSE

Defendant argues that the trial court erred by denying his request for a jury instruction on common-law self-defense.[1] This Court generally reviews de novo claims of instructional error involving questions of law, but the trial court's determination that a jury instruction applies to the facts of the case is reviewed for an abuse of discretion. *People v Everett*, 318 Mich App 511, 528; 899 NW2d 94 (2017). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Guajardo*, 300 Mich App 26, 34; 832 NW2d 409 (2013) (quotation marks and citation omitted).

"A defendant in a criminal trial is entitled to have a properly instructed jury consider the evidence against him or her." *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). "A defendant asserting an affirmative defense must produce some evidence on all elements of the defense before the trial court is required to instruct the jury regarding the affirmative defense." *People v Crawford*, 232 Mich App 608, 619; 591 NW2d 669 (1998). If a defendant introduces evidence supporting self-defense, he is entitled to a jury instruction on self-defense. *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002). "At common law, the affirmative defense of self-defense justifies otherwise punishable criminal conduct, usually the killing of another person, if the defendant honestly and reasonably believes his life is in imminent danger or that there is a threat of serious bodily harm and that it is necessary to exercise deadly force to

---

[1] Defendant acknowledges that he was not entitled to an instruction on statutory self-defense under MCL 780.972, which applies only to "[a]n individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force . . . " This statute does not apply to defendant because he was illegally in possession of a firearm.

prevent such harm to himself." *People v Dupree*, 486 Mich 693, 707; 788 NW2d 399 (2010) (citations and quotation marks omitted). In *Guajardo*, this Court reaffirmed the general principle that "a defendant does not act in justifiable self-defense when he or she uses excessive force or when the defendant is the initial aggressor." *Guajardo*, 300 Mich App at 35 (citation omitted).

Defendant argues that his self-defense theory applies to the charges of resisting or obstructing a police officer, assault with intent to commit murder, and assault with intent to do great bodily harm less than murder. In *People v Moreno*, 491 Mich 38, 46; 814 NW2d 624 (2012), our Supreme Court held that the enactment of MCL 750.81d, which prohibits assaults on law enforcement officers carrying out their duties, did not abrogate the common-law right to resist an unlawful arrest. Accordingly, defendant was not prohibited from asserting self-defense against the resisting or obstructing charges if his arrest was unlawful.

Defendant argues that the evidence established a jury-triable question whether Scheyler was making an unlawful arrest, and whether Scheyler's conduct caused defendant to honestly and reasonably believe that Scheyler posed an imminent threat of death or serious bodily injury. Defendant emphasizes that his brother, Lawrence Washington, who provided the only eyewitness evidence, denied hearing Scheyler mention the outstanding warrants when Scheyler confronted defendant and attempted to take him into custody. "Where an arrest is made under a warrant, it shall not be necessary for the arresting officer personally to have the warrant in his possession but such officer must, if possible, inform the person arrested that there is a warrant for his arrest and, after the arrest is made, shall show such person said warrant if required, as soon as practicable." MCL 764.18. Lawrence Washington's testimony created a question of fact whether Scheyler failed to inform defendant that he was being arrested pursuant to his outstanding warrants. However, regardless of whether Washington heard Scheyler mention the warrants to defendant, or whether defendant was fearful of the potential use of excessive force by the police, Washington's testimony established that defendant's use of deadly force was significantly excessive and disproportionate to the circumstances. Washington testified that defendant was in the doorway of the motel room when Scheyler grabbed him by the collar. His testimony continued:

> *Q*. So once the police officer grabbed your brother, was—were they like both hands, were they like fighting, tussling? What was goin' on?
>
> *A*. Tusslin'.
>
> *Q*. Tusslin'. So both of them had both their hands on each other. Is that right?
>
> *A*. Well, the police had one hand still on his collar. And my brother had his arms wrapped around 'em.
>
> *Q*. Were they like struggling with each other, like was your brother trying to get away?
>
> *A*. I don't know.

*Q*. You don't know, okay. Okay. So you recall that your brother had his arms around the police officer and the police officer had one hand on your brother's collar. Is that right?

*A*. Yeah.

*Q*. And then you said that you saw the police officer get his gun out?

*A*. No, I saw him reaching for his gun. He couldn't get it out yet.

*Q*. Okay. Why couldn't he get it out?

*A*. He just didn't get it out yet.

*Q*. Oh, okay.

*A*. But when they got up against they was tusslin' against the van—and excuse me—and then when they separated, the policeman pulled his gun.

*Q*. Okay. When the policeman pulled his gun, had your brother already shot him?

*A*. I think so.

Assuming that defendant subjectively believed that Scheyler was harassing him without a legitimate purpose and that Scheyler presented a possible threat, the evidence establishes that defendant shot Scheyler before Scheyler drew his own weapon. Furthermore, Lawrence Washington's testimony established that defendant escalated the incident by putting both of his arms around Scheyler and "tussling." Washington stated that he did not know if defendant was trying to get away from Scheyler. Washington also stated that Scheyler was unable to pull out his gun at this stage of the altercation. Defendant then further escalated the incident by shooting Scheyler. Defendant's use of deadly force was an excessive reaction to being grabbed by Scheyler. Defendant continued to use excessive force by shooting at Scheyler after Scheyler ran to the restaurant parking lot, and by then also shooting at Paul. Accordingly, the trial court did not abuse its discretion by denying defendant's request for an instruction on self-defense.

### III. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises additional issues in a supplemental brief, filed in propria persona pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4. Defendant asserts generally that the trial court improperly admitted certain evidence against him, that he received ineffective assistance of trial counsel and appellate counsel, and that the police and prosecutor committed misconduct.

### A. EVIDENTIARY CLAIMS

Defendant argues that the trial court admitted prior-acts evidence in violation of MRE 404(b), although he appears to also argue that the evidence was either irrelevant under MRE 402

or outweighed by the danger of unfair prejudice under MRE 403. Specifically, he argues that the trial court should not have admitted videos from police vehicle dash cameras, testimony regarding guns seized from his storage unit, and evidence of prior charges against him. We find one potential error, but we find that potential error harmless.

Defendant failed to object to most of his evidentiary claims, and his objection to the admission of outstanding warrants failed to specify a basis. Consequently, his evidentiary issues are unpreserved. MRE 103(a)(1). Unpreserved issues are reviewed for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Defendant bears the burden of establishing that error occurred, that the error was plain, and that the plain error affected substantial rights. *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003). An error is plain if it is clear or obvious, and an error affects substantial rights if it is prejudicial, i.e., if it affects the outcome of the proceedings. *Id.* at 355-356. "[W]hether a rule or statute precludes admission of evidence is a preliminary question of law that this Court reviews de novo." *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013).

Defendant's brief simply states, "Numerous dashcam videos of high speed driving by officer's [sic] on th[ei]r way to HomeTown Inn." Defendant does not explain why the videos were inadmissible, or why they were unfairly prejudicial. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). "The failure to brief the merits of an allegation of error constitutes an abandonment of the issue." *People v McPherson*, 263 Mich App 124, 136; 687 NW2d 370 (2004). Criminal defendants appearing in propria persona are entitled to "be held to less stringent standards than formal pleadings drafted by lawyers," but they remain obligated to provide at least some support for their claims. *Estelle v Gamble*, 429 US 97, 106-108; 97 S Ct 285; 50 L Ed 2d 251 (1976) (internal quotation and citation omitted). We decline to consider defendant's unsupported claim of error regarding the dash cameras.

Defendant next states that "items from [his] storage unit had nothing what so ever to do with the trial nor the incident as charged." Although minimal, we also perceive no clear relevance to the guns seized from defendant's storage unit. Consequently, we presume, although we do not decide, that evidence regarding defendant's storage unit was inadmissible. Nevertheless, the testimony regarding this evidence was both brief and isolated. It merely referenced the fact that long guns were seized from a storage unit pursuant to a search warrant. There was no effort to link this evidence to defendant's character or to argue that it showed defendant's propensity for violence. Indeed, the prosecutor did not reference this evidence in her opening statement, or in her closing or rebuttal arguments. In addition, without referring to this particular testimony, the trial court instructed the jury that it "must not convict the Defendant here because you think he is guilty of other bad conduct" and that "[a]ll the evidence must convince you beyond a reasonable doubt that the Defendant committed the alleged crime or you must find the Defendant not guilty." These instructions served to protect defendant's substantial rights by reducing any potential that the jury might convict defendant on the basis of uncharged

conduct. Juries are presumed to follow their instructions absent extraordinary circumstances. *People v Bruner*, 501 Mich 220, 228; 912 NW2d 514 (2018).

Under these circumstances, in a trial that spanned a period of two weeks and involved more than two dozen prosecution witnesses, there is no basis for concluding that the brief and isolated testimony regarding the seizure of guns from the storage unit affected the outcome of defendant's trial. Accordingly, defendant has not met his burden of demonstrating that any error affected his substantial rights. *Jones*, 468 Mich at 355-356; *Carines*, 460 Mich at 763.

Next, defendant complains about the admission of "[n]umerous charges from past that were the result of me having been a victim of I.D. THEFT." Defendant does not further specify what charges were improperly introduced, or cite to the trial court record for instances in which such evidence was introduced. Furthermore, defendant does not articulate any legal basis for the alleged inadmissibility of his prior charges beyond what we take as an implication that he did not actually commit any of the offenses in those charges. We presume that to be true, and we further presume defendant refers to evidence of his outstanding warrants. Nevertheless, the warrants were admitted for the purpose of establishing a significant contested issue at trial: whether Scheyler was conducting a lawful arrest. We therefore do not find that they were admitted for an impermissible character or criminality purpose under MRE 404(b). See *People v Dixon-Bey*, 321 Mich App 490, 517; 909 NW2d 458 (2017); *People v Mardlin*, 487 Mich 609, 615-616; 790 NW2d 607 (2010). For the same reason, the evidence was highly relevant to a critical issue. *People v Powell*, 303 Mich App 271, 277; 842 NW2d 538 (2013). Because the warrants concerned misdemeanor charges, thereby lessening their prejudicial effect, we do not find that their "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *People v Yost*, 278 Mich App 341, 407-409; 749 NW2d 753 (2008).

Finally, defendant also complains that the prosecution listed 72 witnesses that it never interviewed or called to testify. Defendant does not further explain the basis for this claim. Specifically, he fails to explain how the failure to interview or call alleged witnesses somehow led to the improper admission of irrelevant and prejudicial evidence, or how he was otherwise prejudiced by the prosecutor's identification of witnesses who were not interviewed or called. We find this issue inadequately presented and of no otherwise obvious merit, and therefore defendant has not met his burden of demonstrating a plain error affecting his substantial rights with respect to this claim.

## B. INEFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE COUNSEL

Defendant did not raise a claim of ineffective assistance of trial counsel in a motion for a new trial or request for an evidentiary hearing under *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973), or seek to make a testimonial record in the trial court in connection with a claim of ineffective assistance of appellate counsel. Therefore, review of defendant's claims is limited to errors apparent on the record. *People v Lockett*, 295 Mich App 165, 186; 814 NW2d 295 (2012); *People v Reed*, 198 Mich App 639, 647; 499 NW2d 441 (1993). To establish ineffective assistance of counsel, defendant must show that "(1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness, and (2) but for

counsel's error, there is a reasonable probability that the outcome of the defendant's trial could have been different." *People v Solloway*, 316 Mich App 174, 188; 891 NW2d 255 (2016) (citations omitted).

To the extent we can comprehend defendant's argument, it appears that he presents four basic claims: (1) trial counsel was biased against defendant because her father was a police officer; (2) trial counsel failed to present a defense theory that Scheyler set up the altercation with defendant as part of a scheme to seek revenge against defendant; (3) trial counsel failed to call witnesses from the Hometown Inn; and (4) trial counsel "did not explain or push the 180 rule" on defendant's behalf. Defendant does not cite record support for any of these claims. The first and second claims are so totally unsupported by anything other than, apparently, defendant's personal belief, that we must deem them insufficiently presented for us to consider. *Estelle*, 429 US at 106-108.

Regarding defendant's third claim, "the failure to call a witness can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense." *People v Payne*, 285 Mich App 181, 190; 774 NWS2d 714 (2009) (citation and quotation marks omitted). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009) (citation omitted). Defendant makes the extraordinary claim that the motel clerk told the trial judge that defense counsel interviewed her but failed to call her to testify. Defendant claims that this unnamed witness also allegedly told the trial judge that Scheyler's actions were unlawful and dangerous. Defendant also states that three witnesses would have testified regarding a prior confrontation between defendant and Scheyler. Defendant does not identify any of these alleged witnesses and has not provided an affidavit or other appropriate offer of proof of the testimony they would have presented if called. Therefore, this ineffective-assistance claim also cannot succeed. See *People v Putman*, 309 Mich App 240, 248-249; 870 NW2d 593 (2015) (rejecting an ineffective-assistance claim for failure to call the defendant's brother as a witness where "the record is devoid of any indication regarding the potential testimony of defendant's brother").

We presume defendant's final argument pertaining to "the 180 rule" is a reference to MCL 780.131(1), which provides, in pertinent part:

> Whenever the department of corrections receives notice that there is pending in this state any untried warrant, indictment, information, or complaint setting forth against any inmate of a correctional facility of this state a criminal offense for which a prison sentence might be imposed upon conviction, the inmate shall be brought to trial within 180 days after the department of corrections causes to be delivered to the prosecuting attorney of the county in which the warrant, indictment, information, or complaint is pending written notice of the place of imprisonment of the inmate and a request for final disposition of the warrant, indictment, information or complaint.

"[T]he statute applies only to those defendants who, at the time of trial, are currently serving in one of our state penal institutions, and not to individuals awaiting trial in a county jail." *People v McLaughlin*, 258 Mich App 635, 643; 672 NW2d 860 (2003). Defendant does not explain why he believes the 180-day rule applied to him. Trial counsel stated at the sentencing hearing that

defendant's prior record consisted of "one prior felony for Attempt CCW back in 1997." There is no indication that defendant was an inmate of a correctional facility who was subject to MCL 780.131 at the time of trial. Therefore, this claim is without merit.

Defendant also accuses prior appellate counsel of moving for resentencing instead of filing an appeal, even after the trial judge allegedly informed her that defendant's convictions would be reversed. There is no record support for this extraordinary allegation. Moreover, appellate counsel continued to pursue an appeal on defendant's behalf, and counsel's motion for resentencing did not interfere with defendant's right to appeal. Accordingly, this issue is without merit.

### C. PROSECUTORIAL AND POLICE MISCONDUCT

Defendant raises additional claims of prosecutorial and police misconduct. Because defendant did not object to the prosecutor's conduct at trial, or otherwise raise these issues of misconduct, these claims are unpreserved. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Accordingly, we review defendant's claims for plain error affecting defendant's substantial rights. *People v Aldrich*, 246 Mich App 101, 110; 631 NW2d 67 (2001).

Defendant asserts that the prosecutor made an oral admission that there was no evidence against defendant. Defendant further states that Sergeant Ross stated at resentencing that the prosecutor should not have attended the resentencing hearing because the prosecutor's office did not contest his appeal. There is no record support for either of these allegations.

Defendant further argues that the prosecutor relied on inadmissible evidence to obtain his convictions. "A finding of prosecutorial misconduct may not be based on a prosecutor's good-faith effort to admit evidence." *Dobek*, 274 Mich App at 76. As discussed earlier, defendant fails to establish his claims of evidentiary error. The only questionable testimony we have identified is the testimony indicating that some long guns were seized during the execution of a search warrant at defendant's storage unit. As explained earlier, however, the prosecutor did not rely on this testimony to argue that defendant was guilty of the charged crimes, or otherwise refer to this testimony again at trial, and there is no basis for concluding that this brief and isolated testimony affected the outcome of defendant's trial. Thus, the testimony did not affect defendant's substantial rights.

Finally, defendant argues that Scheyler set him up for the violent encounter. Defendant's narrative is difficult to follow, but he appears to state that Scheyler tried to coerce a gas station clerk and manager to falsely report defendant for credit card fraud. Defendant claims the manager made the false report, but the clerk would have testified regarding Scheyler's corrupt demand. Defendant also accuses Scheyler of arranging to have the motel turn off the exterior lights to enable Scheyler to conduct the unlawful arrest. Given defendant's failure to provide any factual support for this theory, he cannot meet his burden of establishing a plain error affecting his substantial rights.

Affirmed.

/s/ Thomas C. Cameron
/s/ Jane M. Beckering
/s/ Amy Ronayne Krause