*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JARVIZ JAMES BROWN,

        Defendant-Appellant.

UNPUBLISHED
March 25, 2021

No. 350735
Calhoun Circuit Court
LC No. 2018-002637-FC

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DAVON CAPRICE WEST,

        Defendant-Appellant.

No. 352034
Calhoun Circuit Court
LC No. 2018-002638-FC

Before: BORRELLO, P.J., and BECKERING and SWARTZLE, JJ.

PER CURIAM.

Defendants' criminal convictions stem from a drive-by shooting that left one victim a paraplegic. Following a joint trial, a jury convicted brothers Jarviz James Brown and Devon Caprice West of assault with intent to murder (AWIM) Anthony Bacon, MCL 750.83[1], intentional discharge of a firearm from a vehicle causing serious impairment of a body function of another individual (intentional discharge of a firearm from a vehicle), MCL 750.234a(1)(c), and three counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced Brown to 35 to 50 years' imprisonment for the assault with

---

[1] Defendants were also charged with AWIM with respect to Lakesha Bills, but the jury acquitted them of the charge.

-1-

intent to murder conviction, 13 to 30 years for the intentional discharge of a firearm from a vehicle conviction, and three concurrent two-year terms for the felony-firearm convictions, to be served consecutively to the other sentences. The court sentenced West as a third habitual offender, MCL 769.11, to 15 to 40 year's imprisonment for the intentional discharge of a firearm from a vehicle conviction, but otherwise imposed sentences the same as Brown's. Both defendants appealed as of right, and we consolidated their appeals.[2] We affirm.

## I. PERTINENT FACTS

In August 2018, Lakesha Bills drove her young children and her brother, Anthony Bacon, to a fast-food restaurant in Battle Creek a lunchtime. There, they encountered defendants in the parking lot. Bacon and defendants had an acrimonious relationship. Bacon instructed Bills to drive away, but before she could do so, defendants approached her vehicle and exchanged harsh words with Bacon. Threats to fight were made both ways, Brown allegedly threatened to kill Bacon,[3] and Bacon spit at West. Bills finally drove away, but Brown followed in his white Jaguar, with West in the passenger seat. Bills was able to briefly elude them before arriving at her home. Shortly after arriving home, as Bills was attempting to hurry her children inside the house, Brown's car came around the corner and Bacon and Bills heard shots. Bacon took cover between vehicles in the driveway and brandished his gun, shooting back one or two times. Bullets fired by West as he stood up through the Jaguar's sunroof struck the vehicle near Bacon, the side and front of Bills's house, and the living room. West shot at least 11 times. Bills was hit by a bullet that lodged near her spine and paralyzed her legs. Brown sped away and drove to sibling Harry Gibson's home, where defendants switched vehicles. They were subsequently apprehended near Kalamazoo.

## II. DOCKET NO. 350735, BROWN

## A. INSUFFICIENT EVIDENCE

In his appeal, Brown argues that the evidence was insufficient at trial to convict him of the charged crimes. We disagree.

When reviewing a challenge to the sufficiency of the evidence, this Court reviews the evidence de novo in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime were proved beyond a reasonable doubt. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). This Court must not interfere with the fact-finder's role in deciding the weight and credibility to give to a witness's testimony. See *People v Lemmon*, 456 Mich 625, 646-647;

---

[2] *People v Jarviz James Brown* and *People v Davon Caprice West*, unpublished order of the Court of Appeals, entered June 30, 2020 (Docket Nos. 350735, 352034).

[3] Bacon testified that a threat to kill him was made at the fast-food restaurant, but he either could not or would not say which defendant had made the threat. Testifying after Bacon, Bills answered affirmatively when asked if anyone had threatened Bacon, and she identified Brown as that person.

576 NW2d 129 (1998) (stating that when the question is one of credibility posed by diametrically opposed versions of the events in question, courts must leave the test of credibility with the trier of fact). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). It is for the fact-finder alone to "determine what inferences may be fairly drawn from the evidence and determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). "All conflicts in the evidence must be resolved in favor of the prosecution." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

Brown was convicted of AWIM, intentional discharge of firearm from a vehicle, and felony-firearm under an aiding and abetting theory, based on West's actions of standing up through the sunroof of Brown's car and firing his weapon at Bacon while Brown drove the car past Bills' house. One who procures, counsels, aids or abets in the commission of an offense may be convicted and punished as if he directly committed the offense. MCL 767.39. To establish that a defendant aided and abetted a crime, the prosecutor must show that:

> (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement. [*People v Robinson*, 475 Mich 1, 5-6; 715 NW2d 44 (2006) (quotation marks and citations omitted).]

The elements of AWIM are: (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder. *People v Ericksen*, 288 Mich App 192, 195-196; 793 NW2d 120 (2010) (quotation marks and citation omitted). On appeal, Brown focuses his sufficiency argument on his state of mind. Generally, an aider and abettor must possess the same requisite intent as that required of a principal. *People v Mass*, 464 Mich 615, 628; 628 NW2d 540 (2001). Brown claims he had no intention of killing Bacon, but thought he was driving West to engage in a fistfight with Bacon; he did not know West had a weapon until West began to shoot, and he sped away from the scene as soon as the shooting began.

To establish the necessary intent of an aider and abettor, a prosecutor must prove that the defendant had a specific intent to commit the crime, that the defendant had knowledge of his principal's intent, or that the criminal act committed by the principal was an incidental consequence that would have been reasonably expected to result as a natural and probable consequence of the intended wrong. *Robinson,* 475 Mich at 9. An aider and abettor's state of mind may be inferred from all the facts and circumstances. *Carines*, 460 Mich at 758. "Factors that may be considered include a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime." *Id*. (quotation marks and citation omitted). A defendant's mere presence at a crime, even with knowledge that the offense is about to be committed, is not enough to make a defendant an aider and abettor. *People v Norris*, 236 Mich App 411, 419-420; 600 NW2d 658 (1999). Some advice, aid, or encouragement is required. Yet, once the defendant's conduct has had the effect of inducing the crime, the amount of advice, aid, or encouragement is immaterial. *People v Moore*, 470 Mich 56, 71; 679 NW2d 41 (2004).

-3-

In this case, the jury heard testimony that Brown and West are brothers, that Brown threatened Bacon during their argument at the fast-food restaurant, that Bacon antagonized West by spitting at him, and that Brown followed Bills's car after she drove away with Bacon from the restaurant. A reasonable jury could infer from Brown's pursuit of Bills's car that he was intent on prolonging the argument. The jury also heard testimony that Bills attempted to drive so as to elude Brown. From this, the jury could reasonably infer that the threat of murder against Bacon was convincing, that Bacon knew he had antagonized West by spitting at him, and that Bills and Bacon took the situation seriously. A person making a local delivery testified that he saw a whiteish car driving aggressively and running a stop sign, which suggests Brown's determination to locate and catch up with Bills and Bacon before they could disappear. Testimony further indicated that West stood up through the sunroof of Brown's car and was shooting as the car traveled from Washington Street onto West Goguac Street, around the corner where Bills's house stood. This occurred soon after Bills and Bacon arrived at Bills's home, and before they had time to go from the car into Bills's home. A crime technician testified that Bills's car was hit three times, there were bullet holes in Bills's residence, and bullet fragments were found inside the living room. From this, a jury could reasonably infer that Brown drove fast enough to allow them to catch Bacon and Bills by surprise, and steady enough to enable West to fire multiple times with some accuracy in Bacon's direction. Moreover, Bills testified that Brown's car came to a complete stop at the end of her driveway in front of her house, from which a jury could reasonably infer that Brown was aiding, and even encouraging, West to shoot Bacon, whom testimony places in the driveway while the shooting is occurring. Finally, Brown assisted and participated in West's fleeing; he left the scene and they immediately exchanged cars and drove to a different city.

Intent to kill may be inferred from all the facts in evidence, including the use of a deadly weapon. See *People v Henderson*, 306 Mich App 1, 11; 854 NW2d 234 (2014), overruled on other grounds *People v Reichard*, 505 Mich 81 (2020). Here, although Brown did not fire a gun at Bacon and Bills, the jury heard testimony indicating that he threatened to kill Bacon, who antagonized West, then drove West to where Bacon was, and handled his car in a way that enabled West to fire a weapon multiple times at Bacon through the sunroof. The jury could reasonably infer from the brothers' close association, from Brown's facilitation of West's shooting at Bacon, including stopping in front of Bills's house after the shooting began, and from Brown's attempt after the shooting to help West avoid detection, that he aided and abetted in an assault on Bacon with an intent to kill him. See *Carines*, 60 Mich at 758.

Brown and West testified that they thought they were going to a fistfight with Bacon and they did not intend to kill him. However, the jury verdicts indicate that the jury did not find defendants' testimony credible, and this Court will "not interfere with the fact-finder's role in deciding the weight and credibility to give to a witness's testimony." See *Lemmon*, 456 Mich at 646-647; see also *Nowack*, 462 Mich at 400.

We also conclude that plaintiff presented sufficient evidence to support Brown's conviction of the intentional discharge of a firearm from a vehicle in violation of MCL 750.234a(1)(c). Brown contends the evidence was insufficient to support the conviction because both he and West testified that Brown did not know West had a gun. The jury heard this testimony and found that it was not credible. As already indicated, we will not interfere with the fact-finder's credibility determination. See *Nowack*, 462 Mich at 400. Even if Brown did not initially know that West had a gun, the jury heard testimony from which it might reasonably infer that Brown drove in a manner

that enabled West to shoot multiple times at Bacon, and even stopped in front of Bills's house after the shooting began. This testimony, if believed, is sufficient to demonstrate that, after he discovered West had a gun, Brown nevertheless took measures to assist West in his intentional discharge of the firearm from the vehicle. There is no dispute that Bills was shot in the back and lost the use of her legs as a consequence.

As to aiding and abetting felony-firearm, the Michigan Supreme Court explained in *Moore*, 470 Mich at 70-71:

> Establishing that a defendant has aided and abetted a felony-firearm offense requires proof that a violation of the felony-firearm statute was committed by the defendant or some other person, that the defendant performed acts or gave encouragement that assisted in the commission of the felony-firearm violation, and that the defendant intended the commission of the felony-firearm violation or had knowledge that the principal intended its commission at the time that the defendant gave aid and encouragement. In determining whether a defendant assisted in the commission of the crime, the amount of advice, aid, or encouragement is not material if it had the effect of inducing the commission of the crime. [Citation omitted.]

Brown once more contends that the evidence was insufficient to support his felony-firearm conviction because he and West testified that he did not know West had a gun. Again, Brown asks this Court to reject the fact-finder's credibility assessment and reasonable inferences from the evidence and again, we decline to do so. See *Nowack*, 462 Mich at 400. In addition, Detective Tyler Sutherland described mannerisms a person would adopt if they were concealing a gun, and the jury viewed video of Brown and West from the fast-food restaurant that showed West holding something under his shirt. The jury could infer from the video whether West had a gun and whether Brown would have observed West's having a gun. Further, the same evidence that supports the reasonable inference that Brown performed acts assisting West's shooting a firearm from the vehicle also support the jury's finding that Brown "performed acts or gave encouragement that assisted in [West's] commission of the felony-firearm violation, and that [Brown] intended the commission of the felony-firearm violation or had knowledge that [West] intended its commission at the time that [Brown] gave aid and encouragement." *Moore*, 470 Mich at 70-71.

Reviewing the evidence in the light most favorable to the prosecution, *Meissner*, 294 Mich App at 452, deferring to the jury's credibility assessments, *Nowack*, 462 Mich at 400, and resolving all conflicts in the evidence in favor of the prosecution, *Kanaan*, 278 Mich App at 619, we conclude that the evidence was sufficient to support the jury's conviction of Brown for AWIM, intentional discharge of a firearm from a vehicle, and felony-firearm.

## B. SEVERANCE

Brown next argues that the trial court should have granted defendants' motion for separate trials because his defense was irreconcilable with West's defense. We disagree. This Court reviews for an abuse of discretion a trial court's decision on a motion to try codefendants separately. *People v Furline*, 505 Mich 16, 20; 949 NW2d 666 (2020). The trial court does not

abuse its discretion when it chooses an outcome within the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

The trial court "must sever the trial of defendants on related offenses on a showing that severance is necessary to avoid prejudice to substantial rights of the defendant." *Furline*, 505 Mich at 20, quoting MCR 6.121(C).

> [S]everance may be warranted when defendants' mutually exclusive or antagonistic defenses create a serious risk of prejudice. . . . [T]he defenses must be irreconcilable and create such great tension that a jury would have to believe one defendant at the expense of the other. Defenses are mutually exclusive within the meaning of this rule if the jury, in order to believe the core of the evidence offered on behalf of one defendant, must disbelieve the core of the evidence offered on behalf of the co-defendant. Prejudice requiring reversal occurs only when the competing defenses are so antagonistic at their cores that both cannot be believed. [*Id*. at 21 (quotation marks and citation omitted).]

Defendants opposed plaintiff's pretrial motion to join their cases for trial because, at the time, they did not know whether their defenses would conflict. The trial court granted plaintiff's motion, but encouraged defendants to move for severance should they discover that their defenses conflicted. On the first day of trial, West moved for separate trials, asserting that "severance is necessary in order to avoid prejudice and to avoid violating substantial rights for the defendants," that there was a "potential for confusion and the likelihood of prejudice stemming from the complexity and the nature of the evidence," and that different defenses for each defendant could develop. Brown joined the motion, stating that there were "serious due process concerns." The trial court denied the motion on the grounds that defendants failed to provide any facts showing that their defenses were mutually exclusive or that a joint trial would prejudice either of them.

The trial court did not abuse its discretion by denying defendants' joint motion for severance. Although defendants offered conclusory statements regarding why their trials should be severed, they provided no facts indicating that their defenses were mutually exclusive or that prejudice would result from a joint trial. See *Id*. at 20-21 (indicating that a trial court can reject statements regarding irreconcilable defenses that lack sufficient specificity or are conclusory because a defendant's claim of prejudice must be substantiated through concrete facts).

On appeal, Brown contends that his and West's defenses were irreconcilable because he claimed that he thought that he was driving to Bills's home for a physical fight, and did not know West had a gun, and West claimed that he had hidden the gun and took it out to return fire after Bacon shot at them. These versions of the drive-by shooting are not mutually exclusive. The jury did not have to reject West's defense that Bacon shot first in order to believe Brown's defense that he did not know West had a gun until he fired it. In fact, after West testified, Brown was asked whether West had testified accurately, and Brown replied that he recalled the events vividly, and that West's testimony was "very accurate." Because Brown's and West's defenses were not mutually exclusive, severance was not warranted. *Id*. at 21.

As to prejudice, Brown contends on appeal that the jury convicted him merely because he was present in the car with West while West and Bacon engaged in a gunfight. However, as

discussed above, the evidence was sufficient for a reasonable trier of fact to conclude beyond a reasonable doubt that Brown aided and abetted in the commission of AWIM, the intentional discharge of a firearm from a vehicle, and felony-firearm. Accordingly, Brown's assertion that he was convicted because of his mere presence is unavailing. Because Brown has failed to show on appeal "that the requisite prejudice in fact occurred at trial," we will not reverse the trial court's joinder decision. *Id.* (quotation marks and citation omitted).

## III. DOCKET NO. 352034, WEST

### A. SELF-DEFENSE INSTRUCTION

In his appeal, West contends that the trial court erred by denying his request for a self-defense instruction with respect to the charge of intentional discharge of a firearm from a vehicle causing serious impairment of another individual, MCL 750.234a(1)(c). We disagree. This Court reviews claims of instructional error de novo, see *People v Perez*, 469 Mich 415, 418; 670 NW2d 655 (2003), and the trial court's "determination whether a jury instruction is applicable to the facts of the case" for an abuse of discretion, *People v Heikkinen*, 250 Mich App 322, 327; 646 NW2d 190 (2002).

A defendant has the right to "a properly instructed jury." *People v Mills*, 450 Mich 61, 80; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995). "Jury instructions must not exclude consideration of material issues, defenses, and theories for which there is supporting evidence." *People v Kurr*, 253 Mich App 317, 328; 654 NW2d 651 (2002). For the jury to be instructed on a particular theory of defense, the evidence must support the theory. *People v Johnson*, 171 Mich App 801, 804; 430 NW2d 828 (1988). "A defendant asserting an affirmative defense must produce some evidence on all elements of the defense before the trial court is required to instruct the jury regarding the affirmative defense." *People v Crawford*, 232 Mich App 608, 620; 591 NW2d 669 (1998). Self-defense is a complete, affirmative defense that justifies otherwise punishable criminal conduct. See *People v Dupree*, 486 Mich 693, 707; 788 NW2d 399 (2010). A person not engaged in the commission of a crime at the time he uses deadly force against another may use such force if he "honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself . . . ." MCL 780.792(1)(a).

The trial court declined to instruct the jury on self-defense relative to the charge against West of intentional discharge of a firearm from a vehicle causing serious impairment because it concluded that West's testimony did not support such an instruction. West testified that he heard a shot and saw Bills fall face forward on the porch of her house before he fired any shots toward Bacon. The court reasoned that West's testimony appeared to suggest that Bacon shot Bills, rather than that West shot her while exchanging fire with Bacon in self-defense. Because West did not present any evidence that he was using force to prevent immediate harm to himself or Brown when Bills suffered serious bodily harm, the court deemed the instruction unwarranted. See *Crawford*, 232 Mich App at 620.

On appeal, West still does not point to any record evidence that would have supported giving a self-defense instruction. Instead, he contends that the court's comment that there was "slim" evidence of West acting in self-defense against Bills signifies that there was some evidence, and that the existence of some evidence warranted the instruction. West misconstrues the court's

-7-

observation. Reading the trial court's slim-evidence comment in context shows that the court was referring to the evidence supporting a self-defense instruction relative to the charge of AWIM as to Bills. The court noted that the evidence supported giving a self-defense instruction in the context of the charge of AWIM as to Bacon. But as it related to Bills, the "evidence . . .is very slim," and the court noted that it was "only just persuaded to allow that instruction to apply to assault with intent to murder, at all. As it relates to Ms. Bills." The court then addressed the self-defense instruction with regard to the charge of intentional discharge of a firearm from a vehicle causing serious impairment, and concluded that West's testimony did not support giving the instruction. Because West failed to point to any record evidence that he was using deadly force to prevent imminent harm when Bills suffered serious impairment, and in fact testified that he did not resort to deadly force until after Bills had fallen, he was not entitled to a self-defense instruction relative to this charge. See *id*. Accordingly, the trial court did not abuse its discretion by declining to give the instruction. See *Heikkinen*, 250 Mich App at 327.

## B. BIND OVER

In a Standard 4 brief,[4] West contends the district court abused its discretion by determining that there was probable cause to believe he committed an assault with intent to murder Bacon, and by binding him over to the circuit court for trial on that charge. We disagree. We review a decision to bind over a defendant for an abuse of discretion, overturning the decision only if it is "outside the range of principled outcomes." *People v Shami*, 501 Mich 243, 251; 912 NW2d 526 (2018).

After a criminal prosecution begins with the filing of an information, "the accused has a statutory right to a preliminary examination." *People v Taylor*, 316 Mich App 52, 54; 890 NW2d 891 (2016) (quotation marks and citation omitted). The purpose of a preliminary examination is to determine whether to bind the defendant over to circuit court for trial on the basis of a finding that a felony has been committed and there is probable cause to believe that the defendant committed the crime. See *id*. at 54. "Probable cause requires a quantum of evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *People v Anderson*, 501 Mich 175, 183; 912 NW2d 503 (2018) (quotation marks and citation omitted). Probable cause "requires sufficient evidence of each element of the crime charged, or from which the elements may be inferred." *Shami*, 501 Mich at 250-251.

As to the charge of AWIM, West contends that there was no evidence that he intended to kill Bacon. "Intent may be inferred from all the facts and circumstances[,]" *People v Cameron*, 291 Mich App 599, 615; 806 NW2d 371 (2011), and because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient, *Kanaan*, 278 Mich App at 622. Evidence at the preliminary examination showed that conflict existed between Bacon and both West and Brown, that Brown explicitly threatened to kill Bacon,[5] and that Bacon antagonized West by spitting at him. It also showed that Brown drove West to Bills's home, where West fired multiple rounds toward Bacon and Bills, and that Bills was hit. In the absence of any evidence of

---

[4] A "Standard 4" brief refers to the brief a defendant may file in propria persona pursuant to Standard 4 of Michigan Supreme Court Administrative Order No. 2004-6, 471 Mich c, cii (2004).
[5] Bacon testified at the preliminary examination, "Jarviz looked at me. Said he was going to kill me."

a conflict with Bills, it is reasonable to infer that Bacon was West's target. The intent to kill may be inferred from the use of a deadly weapon. *Carines*, 460 Mich at 759. In our view, this evidence was "sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *Anderson*, 501 Mich at 183.

Defendant claims that Bacon was the aggressor because he spit at West, carried a gun, and took cover in the driveway to shoot at the Jaguar. However, evidence established that Brown and West sought Bacon out by following him to Bills's home, and no evidence was presented at the preliminary examination establishing that Bacon initiated the violence by shooting first.

West also asserts that, because there was no evidence that he intended to kill Bacon, there was no intent to transfer to Bills. "[T]he doctrine of transferred intent . . . provides: 'Where one intends to assault a certain person, but by mistake or accident assaults a different person, the crime so committed, if any, is the same as though the person originally intended to be assaulted had been assaulted.' " *People v Hurse*, 152 Mich App 811, 813; 394 NW2d 119 (1986), quoting CJI 17:1:05. As already discussed, the evidence supported the district court's determination that there was probable cause to believe that West intended to kill Bacon. If West shot Bills while he intended to kill Bacon, the intent to kill Bacon could be transferred to Bills. Thus, transferred intent could be considered.

Even if the district court erred in binding West over on a charge of assault with the intent to kill Bacon, the error was harmless if there was sufficient evidence to convict at trial. See *People v Hall*, 435 Mich 599, 602-603; 460 NW2d 520 (1990). The evidence at trial showed that Bacon had an antagonistic relationship with Brown and West, that he further antagonized West by spitting at him, that West and his brother, Brown, went to Bills's house to confront Bacon, and that as the car Brown was driving neared Bills's house, West stood up through the car's sunroof and fired at least 11 shots toward Bills's house and Bacon, at least three of which hit the SUV near which Bacon was crouching. Minimal circumstantial evidence is required to prove an actor's state of mind. *Kanaan*, 278 Mich App at 622. In addition, as already indicated, "[c]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Carines*, 460 Mich at 757. A jury could reasonably infer from the existence of animosity between Bacon and West, West's use of a deadly weapon, the number of shots fired, and the proximity of the shots to Bacon that West assaulted Bacon with the intent to murder him. See *Carines*, 460 Mich at 759. Although the jury heard West and Brown testify that their intention was to engage in a fistfight with Bacon, not a gunfight, the jury's verdict shows that it disbelieved defendants' testimony on this point. We will not interfere with the fact-finder's credibility determination. See *Nowack*, 462 Mich at 400. Because sufficient evidence supports the jury's conviction of West for assault with intent to kill Bacon, any defects in the bindover on that charge constitute harmless error.

## IV. SENTENCING AND THE TANNER RULE

Both Brown and West argue on appeal that the trial court plainly erred by sentencing them to 35 to 50 years' imprisonment for their AWIM convictions. They claim the sentence violates the rule prohibiting a minimum sentence that is more than two-thirds of the statutory maximum sentence. *People v Tanner*, 387 Mich 683, 690; 199 NW2d 202 (1972) ("Convinced as we are, that a sentence with too short an interval between minimum and maximum is not indeterminate,

-9-

we hold that any sentence which provides for a minimum exceeding two-thirds of the maximum is improper as failing to comply with the indeterminant sentence act"); MCL 769.34(2)(b). The AWIM statute provides for a maximum term of "life or any number of years." MCL 750.83. While at first blush, a sentence of 35 to 50 years appears to violate the *Tanner* rule, and all parties originally agreed on this point, our Supreme Court has determined that the two-thirds rule "does not apply to sentences where the statutory maximum is 'life or any term of years.' " *People v Floyd*, 490 Mich 901; 804 NW2d 564 (2011); see also *People v Smith*, __ Mich App __, __; __ NW2d __ (2021) (Docket No. 346044); slip op at 9. Therefore, defendants are not entitled to sentencing relief based on failure to apply the two-thirds rule.

Affirmed.

/s/ Stephen L. Borrello
/s/ Jane M. Beckering
/s/ Brock A. Swartzle

-10-